## THOMAS SHERIDAN vs. THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Crossing Bumpers of Stationary Freight Train Blockading Street—Contributory Negligence a Question of Fact.*

A long freight train became stalled on an up-grade in a factory district of Baltimore City and blockaded two or more street crossings. For several years heavy trains had been from time to time thus stopped there, and remained at rest until helping engines arrived, and then the two engines gave answering signals before the train started. It had been customary for persons obliged to cross the tracks thus blocked to do so by crawling over or under the freight cars, and this custom was well known to the railway company's employees. On the day of the accident to the plaintiff in this case, he found his way across the street blocked by the train above mentioned, and a railway brakeman told him to cross the train, which he did. Upon his return, an hour later, the plaintiff found the train still stationary. The same brakeman again told him to cross, adding that there was plenty of time to do so, and that a signal would be given before the train started. The plaintiff took hold of two cars and was in the act of getting on the bumpers when the train started, without signal or warning, and plaintiff's foot was crushed between the bumpers and so severely injured as to require amputation. *Held,* that under the special circumstances of this case the plaintiff was not a mere trespasser, and was not guilty of contributory negligence as matter of law, but that the question of contributory negligence should be submitted to the determination of the jury; that a jury might conclude that the custom of the railway company in allowing its stalled trains thus blockading streets to be crossed by pedestrians amounted to an implied invitation to the plaintiff to cross, and if so, that the railway company was bound to exercise reasonable care to protect him while so crossing.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Isaac Lobe Straus* and *Joshua Horner, Jr.*, for the appellant.

It is certainly not to be doubted that the appellee was negligent in suddenly starting its train composed of many cars and extending for six or seven city squares in length, in a populous section of a large city—at a point where the proof impressively shows that it had the strongest reasons to apprehend danger to persons crossing its tracks—over a much frequented and commonly obstructed crossing, which together with all other crossings on both sides thereof and for six or seven consecutive squares had been obstructed by the train in question for over an hour, without ringing a bell or blowing a whistle—which for years had been the customary and invariable signal—or without giving any other notice or warning whatsoever of the fact that the train was about to start. *Trainor's case*, 33 Md. 542; *Hogeland's case*, 66 Md. 149; *Steever's case*, 70 Md. 72; *Wilkins* v. *R. R. Co.*, 101 Mo. 93; *Burger* v. *R. R. Co.*, 112 Mo. 238; *Burey* v. *R. R. Co.*, 92 N. Y. 289; *R. R. Co.* v. *Slattery*, 3 App. Cas. 1155; *Hunkle* v. *R. R. Co.*, 109 N. C. 472, 473-4; *Ernst* v. *Hudson, etc., R. R. Co.*, 35 N. Y. 9; 39 N. Y. 67.

In *Barkley* v. *Mo. Pac. Ry. Co.*, 96 Mo. 367, p. 378, it was said "It may be conceded that when a train has been standing a period of twenty or thirty minutes on a track, at a depot, at a village or town over an approach to a depot, that it is a duty of those in charge of the train to give a proper signal of their intentions to start, so that those who may be on or about the track may be warned of approaching danger in time to get out of the way of the moving cars, and that those who are about going in the way refrain from so doing. And where an injury is received by a person who goes in the way of any of the cars, or being in, fails to get out of the way in time, not knowing that the train was about to start or is in motion, relying upon the duty of the servants of the railway company, to give such signal, and it is not given, such injury being the approximate effect of such failure, a recovery may be had."

The main question to be decided is whether under all the circumstances the plaintiff must as a matter of law be held to have so directly contributed to the accident which befell him as to defeat his action. This question must be answered in the light of the special and peculiar facts of the case. *Cooke* v. *Traction Company*, 80 Md. 551. This is a case where for years the trains of the appellee, several squares in length, have become as a matter of almost daily occurrence, stalled for periods often lasting one hour and sometimes two hours, blocking a number of streets or thoroughfares which crossed its tracks in the neighborhood of extensive industrial plants employing large numbers of persons, where the public, including the persons mentioned, had become accustomed by long continued and notorious usage to cross the tracks by going over and through the halted trains, and where as a consequence it naturally and properly became the established practice of the servants of the company in charge of such of its trains to give notice to the public, who where thus in the habit of crossing through them, of their intention to start the train by blowing a whistle as a signal; and where the appellant, fully apprized of all these circumstances and relying upon them, relied further upon the following considerations arising at the time he attempted to make the crossing.

1. That a considerable number of people crossed through the train that day in safety, just as they had done habitually for years.

2. That the customary whistle signalling that the train was about to start was not given; nor was any notice, warning or sign at all given by anybody.

3. That the brakeman employed in the management and conduct of the train assured him—(*a*) That he had full and plenty of time to cross; (*b*) That when they got help they had to give a signal to the engine ahead before starting the train: (*c*) That "we" can't leave here until "we" get a helper; (*d*) That "we" will probably be here an hour; (*e*) That he had plenty of time to cross *before they blew the whistle.*

And also upon the comprehensive and important considera-

tion that all these various representations of fact by the brake-
man harmonized and comported entirely with what the appel-
lant had observed repeatedly and had seen others act upon
for many years at the very place, under identically the same
circumstances and in relation to the very subject-matter or
transaction in question.

Is it not, therefore, manifestly erroneous to say that the sole
and exclusive inference which must irresistibly be drawn from
such circumstances as are disclosed by this record and recited
above, is that the appellant was guilty of negligence which
absolutely and *per se* bars his right of action and deprives
him of the right to have a fair and impartial jury pass upon
the character of his act in the premises ?   Can it be fairly said
in the presence of such facts that there is no room for ordi-
nary minds to differ upon the question whether the conduct
of the appellant amounted to such negligence as to incon-
testibly defeat his right to recover for the injuries he sustained ?

Surely this is a case "where the nature and attributes of the
act relied on to show negligence contributing to the injury,
can only be correctly determined by considering all the at-
tending and surrounding circumstances of the transaction"
and where accordingly, "it falls within the province of the
jury to pass upon and characterize it and it is not for the Court
to determine its quality as matter of law."

This case is entirely different in its special and characteristic
circumstances from *Lewis* v. *B. & O. R. R. Co.*, 38 Md. 588.
The mere recital of the facts above stated shows how wide and
complete is the difference between that case and this.   Nor
is the decision in *Yorktown, etc., Road* v. *Cason*, 72 Md. 377,
in the least degree applicable to the case at bar, which must
be adjudged in the light of its proper facts and features.

All the cases, analogous to this, hold that the appellant
cannot under the circumstances under which he acted be
charged with negligence directly contributing to his injury.
*Fitzpatrick* v. *R. R. Co.*, 35 Md. 32; *R. R. Co.* v. *Stumpf*, 97
Md. 78; *Scott* v. *R. R. Co.*, 112 Iowa, 54; *Philips* v. *R. R. Co.*,
80 Hun. 404; *R. R. Co.* v. *Cross*, 58 Kan. 424, 427; *Burger*

v. *R. R. Co.*, 112 Mo. 278; *R. R. Co.* v. *Green*, 49 S. W. Rep. 670; *R. R. Co.* v. *Sykes*, 96 Ill. 162, 173; *Hinkle* v. *R. R. Co.*, 109 N. Car. 472; *Clark* v. *R. R. Co.*, 164 Mass. 439; *Conaty* v. *R. R. Co.*, 164 Mass. 572; *Wilkins* v. *R. R. Co.*, 101 Mo. 106; *Correll* v. *R. R. Co.*, 38 Ia. 126; *Ernest* v. *Hudson R. R. Co.*, 30 N. Y. 67; *R. R.* v. *Prescott*, 59 Fed. Rep. 239; *R. R. Co.* v. *Layer*, 112 Pa. St. 414; *Mayer* v. *R. R. Co.*, 63 Ill. App. 309.

*W. Irvine Cross* and *Duncan K. Brent*, for the appellee.

This case falls within the ruling in *Lewis* v. *B. & O. R. Co.*, 38 Md. 598. In this case the plaintiff attempted to climb over a train by going between two freight cars, and not a cross the platform on the end of the car, as in the Lewis case, so that this plaintiff's act is the more glaringly reckless. It being settled law, therefore, in this State, that it is gross negligence that would defeat the plaintiff's right to recover to attempt to cross a train in the manner testified to in this case, there only remains to be considered whether or not this is gross negligence if done on the invitation to the plaintiff to cross the train given by one of the defendant's brakeman. At the trial in the lower Court numerous authorities were cited by the plaintiff to sustain the proposition that an invitation given similar to the one in this case, that is, you have full and plenty of time to cross the train and the whistle will be blown before the train starts, given by a brakeman, will relieve a person who attempts to cross the train in accordance with such invitaton, from all negligence, and the plaintiff tried to make a further distinction in that such a statement by a brakeman was not merely an invitation that the train might be crossed in safety, but a statement of the fact on which the plaintiff had a right to rely. While it may be true that there are some authorities which sustain this view, and while the discussion of this point may be very interesting, it seems that the question has been passed on in this State and the rule firmly laid down. *Dietrich* v. *The Railroad Company*, 58 Md. 347; *Turnpike Road* v. *Cason*, 72 Md. 377.

In *Hickey* v. *Railroad Company*, 14 Allen, 429, which was a suit for damages by a passenger for injuries sustained while riding on the platform of a passenger car with the consent of the conductor of the train, and in accordance with a well-established custom on part of passengers generally, the right to recover was denied, and the rule stated as follows: "If they (passengers) voluntarily take exposed positions, with no occasion therefor   *   *   except a fore license by non-interference, *or express permission of the conductor*, they take the special risks of that position upon themselves." This case has been reaffirmed in Mass., and is law in that jurisdiction today. Again, in *Files* v. *The Railroad Company*, 149 Mass. 204, which was a damage suit for injuries received by the plaintiff, while he was attempting to get into the cab of a freight engine, upon the invitation of the conductor, the Court citing the *Hickey case, supra,* among other things, says: "If a person takes an exposed position upon a train not designed for the use of passengers, he himself incurs the special risks of that position, whether he takes it by the license, non-interference, or *even express permission* of the conductor." See also *B. & O.* v. *State, use of Wiley*, 72 Md. 36; *Hudson* v. *Railroad Co.*, 101 Mo. 13; *Howard* v. *Railroad Co.*, 41 Kan. 403; *Railroad Co.* v. *Jones*, 95 U. S. 439; *Railroad* v. *Pinchin*, 112 Ind. 592; *Young* v. *Railway Co.*, 100 Iowa, 357; *Hunter* v. *Railroad Co.*, 126 N. Y. 18; *O'Mara* v. *D. & H. Canal Co.*, 18 Hun. 192; *Beach on Contributory Negligence*, secs. 196 and 216.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellee in the Court of Common Pleas of Baltimore City for damages for crushing his foot between two cars of a freight train. In the trial of the case below the Court, at the close of the plaintiff's evidence, granted the defendant's prayer directing the jury to render a verdict in its favor because of contributory negligence on the part of the plaintiff. From the judgment entered on the verdict so rendered the plaintiff appealed.

There is but one bill of exceptions in the record and that is

based upon the Court's action in granting the prayer holding that the undisputed evidence showed that the plaintiff had been guilty of negligence directly contributing to cause the injury complained of.

The accident happened at or near the point where the appellee's branch line of railroad from Baltimore City to Locus Point crosses Barney street. This crossing is on a curve in the railroad track and about the middle of a stiff up-grade on which almost every long freight train becomes stalled and is compelled to wait for the assistance of a helping engine. These stalled freight trains currently block the street crossings, on the grade, for from ten minutes to an hour or more at a time. The helping engine usually comes up behind the train and assists by pushing it. It has long been the custom for the helping engine to blow its whistle as a signal, as it approaches the rear of the train, which is answered by a blast from the whistle on the engine at the head of the train. Both of these signals are given before the train moves. This state of affairs has continued for eighteen or twenty years.

The land lying southwest of the railroad is occupied mainly by factories and similar industrial establishments whose operatives and employees largely reside on the other side of the road, where the improvements are almost exclusively dwelling houses. Many of these employees daily cross the railroad tracks at Barney street in going back and forth between their houses and the factories. For eighteen or twenty years it has been the custom of these employees, when a freight train is stalled on the track at the crossing, to cross through the train by jumping over between the cars or crawling underneath them without, so far as the evidence shows, any objection or protest on the part of the persons in charge of the train. At times fifty or more of the men working in the factories were seen go through standing trains at the crossing in that manner in a single day.

At noon of the 29th of December, 1902, the appellant, who was employed at the Thompson Chemical Works on the south of the railroad, started to go along Barney street to his residence,

which was north of the track, for his dinner. When he reached the track he found a long freight train stalled there.   Not desiring to cross the train he walked along side the track to Hanover street which was quite a thoroughfare hoping to get through there but he found that street also blocked by the train.   He then returned to Barney street where he met one of the brakeman of the train who told him to jump over it, but he crawled underneath the cars and crossed in that way. On his return from dinner toward the factory he went first to Hanover street and found the train still standing across it. He then walked down toward Barney street near which he met the same brakeman who again told him to cross the train. The appellant hesitated to cross when the brakeman told him he had plenty of time and further said that when they got help they had to give a signal to the engine ahead before starting the train adding, "we can't leave here until we get a helper and probably we will be here an hour."   The appellant thereupon took hold of two cars and attempted to get upon the bumpers between them so as to cross over the train, but just as he got his foot upon the bumper the train started without signal or warning and crushed his foot between the bumper and the car so badly that it had to be amputated.

The appellee admits the negligence of its own servants by requesting the Court to instruct the jury that the appellant was guilty of contributory negligence.   The only question that we are called on to determine is whether the appellant's own conduct at the time of the accident to him was such as to justify the Court below in holding as a matter of law that he was guilty of contributory negligence.   This question can be correctly answered only in the light of the special and somewhat unusual facts of the case.

The appellant was not a passenger and was therefoie not entitled to the exercise by the appellee of the highest degree of care and diligence in his behalf.   Nor was he a mere trespasser to whom the appellee owed only the duty of abstaining from wantonly and willfully injuring him.   If we admit that it was beyond the scope of the brakeman's employment to bind

the appellee by the express invitation to cross the train which he gave to the appellant at the time of the accident, we cannot close our eyes to the fact that for many years the appellee had acquiesced without objection in the habit of the men working in the factories in that vicinity, of crossing between or under its stalled trains which impeded their passage to and from their daily labor. Under somewhat similar circumstances we said in *Siacik's Admr.*, v. *N. C. R. R. Co.*, 92 Md. 219, the railroad company's "servants might have known from experience and ordinary observation of the blockading of streets by railway cars that some people would likely climb over, between, or, if small enough, under the cars in order to cross the street." A jury might conclude that this conduct of the appellee in the present case in so long permitting the crossing of its stalled trains amounted to an implied assent or invitation to the appellant to cross between the cars of the train which on the day of the accident for so long time closed the passage from his home to his place of labor. If so the appellee was bound to exercise reasonable care to protect him in accomplishing the crossing which he was with its consent attempting to make. *Swift* v. *Staten Island R. T. Co.*, 123 N. Y. 650; *Taylor* v. *Del. & Hud. Canal Co.*, 113 Pa. St. 162; *C. B. & Q. R. Co.* v. *Murowski*, 179 Ill. 77; *Clampit* v. *St. P. K. C. Ry. Co.*, 84 Iowa, 71.

The appellant does not appear to have attempted to make the crossing in a negligent manner. To cross over the bumpers between two freight cars when at rest is not necessarily a dangerous operation. The peril of the situation arises from the danger of the cars starting before the crossing is completed. In the present case the appellant used reasonable care to ascertain when the train would start by making inquiry of one of the brakeman in charge of it who informed him that it would remain for sometime longer until a helping engine came which would signal its approach by blowing its whistle. Assuming that the appellant had the implied assent of the appellee to make this crossing we do not think it can be said as a matter of law that he was guilty of contributory negligence in at-

tempting to make it in the manner appearing from the evidence.

We have repeatedly held that negligence direct or contributory is ordinarily a question for the jury who must solve it by a consideration of the facts of the case before them. In *Cook* v. *Traction Co.*, 80 Md. 551, we said: "Negligence is essentially relative and comparative, not absolute. It is not even an object of simple apprehension apart from the circumstances out of which it grows. As these circumstances necessarily vary in their relations to each other, under different surroundings, they inevitably change their original signification and import. * * * The existence of negligence is therefore to be sought in the facts and surroundings of each particular case. * * * "Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it and it is not for the Court to determine its quality as matter of law. *Fitzpatrick's case*, 35 Md. 32; *Dougherty's case*, 36 Md. 366; *Miller's case*, 29 Md. 252; etc."

We do not think that the present case should be controlled by the authorities relied on by the appellee in support of the proposition that a person who voluntarily takes an exposed position upon a train not designed for passengers assumes the special risks of that position even if he takes it by the express or implied permission of the conductor. The long course of conduct of the appellee in dealing with those whose necessities require them to cross a track on which its freight trains are frequently stalled for a considerable time make the present case one whose circumstances should be considered and passed upon by the jury in determining whether the appellant was guilty of contributory negligence when he was injured.

The Court below erred in taking the case from the jury and for that error the judgment must be reversed.

*Judgment reversed with costs, and new trial awarded.*