520 A.2d 361

David FLOWERS

v.

ROCK CREEK TERRACE LIMITED PARTNERSHIP et al.

David FLOWERS

v.

STING SECURITY, INC. et al.

Nos. 67, 68, Sept. Term, 1985.

Court of Appeals of Maryland.

Jan. 30, 1987.

434

Karl G. Feissner, Langley Park, and John B. Walsh, Jr., Rockville, for David Flowers.

Wade J. Gallagher (Martell, Donnelly, Gallagher & Kastantin, on brief), Rockville, for Rock Creek Terrace Ltd. Partnership et al.

Robert L. Ferguson, Jr. (Daniel Karp, and Allen, Thieblot & Alexander, on brief), Baltimore, for Sting Security, Inc.

Bernard J. Harig (Patrick James Attridge, on brief), Rockville, for Westinghouse Elec. Corp.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

ELDRIDGE, Judge.

David Flowers, a volunteer fireman, sustained severe injuries when he fell twelve stories down an open elevator shaft while responding to a fire in an apartment building. Flowers sued the building owners, the apartment's security guard company, and the elevator manufacturer, alleging in general a failure to maintain the property in a safe condition. The defendants demurred, contending that Flowers's claim was barred by the so-called fireman's rule. The Circuit Court for Prince George's County (Bowen, J.) sustained the demurrers, and the Court of Special Appeals affirmed. We granted a petition for a writ of certiorari to consider the basis for and the scope of the fireman's rule.

## I.

Rock Creek Terrace Limited Partnership owns Rock Creek Terrace Apartments, a high-rise residential apartment building located in Rockville, Maryland. Rock Creek employed Sting Security, Inc., to provide security services, including security guards, for the apartment building. The elevators in the apartment building were manufactured by Westinghouse Electric Corporation.

David Flowers was a fireman with the Kensington Volunteer Fire Department. On October 27, 1981, Flowers and other members of the Kensington Volunteer Fire Department responded to a fire alarm at the Rock Creek Apartments. In the course of the fire, the twelfth-floor lobby became filled with smoke making it nearly impossible to see. As Flowers and other firefighters evacuated tenants

from apartments adjoining the twelfth-floor lobby, Flowers fell down an open elevator shaft and sustained severe permanent injuries.

Flowers filed a sixteen-count declaration in the Circuit Court for Prince George's County against Rock Creek,[1] Westinghouse, Sting Security, and Larry W. Cline, a Sting Security employee. Flowers asserted negligence, statutory liability, nuisance, breach of warranty, fraud, negligent misrepresentation, negligence by a common carrier, and strict liability. In substance Flowers advanced four factual bases for liability: that Rock Creek and Sting Security knew of prior suspicious fires and failed to take any measures to prevent future fires, that Rock Creek failed to adopt reasonable safety precautions, including the installation of smoke detectors and sprinklers, that Rock Creek and Westinghouse installed an elevator system which was not sufficiently fire proof, and that Rock Creek, Sting Security, and Westinghouse failed to warn Flowers of the open elevator shaft. The defendants demurred on the ground that the fireman's rule "precludes recovery by an injured fireman when his injuries arise out of the very occasion for his employment (*i.e.*, heat, smoke and the dangers encountered in fighting a fire) or when he is exposed to those elements by perils which are a part of the risks he faces when he fights a fire." The defendants argued that they owed no duty of care to firemen engaged in the performance of their duties, and that Flowers had admitted in his allegations that he was a fireman injured in the performance of his duties.

In response to the defendants' position that they owed him no duty of care, Flowers first contended that he was entitled to due care because he was injured in the common area. Flowers relied on the Restatement of Torts (2nd),

---

1. Included as defendants in Flowers's declaration and referred to collectively in this opinion as "Rock Creek" are various persons or entities associated with Rock Creek Terrace Limited Partnership, such as general partners, limited partners, and an affiliated apartment management company.

§ 345, which requires the possessor of land to exercise reasonable care for public officers or employees who enter any part of the land held open to the public.[2] Next, Flowers argued that Rock Creek and Sting Security owed him a duty of reasonable care because they had summoned the fire department and knew of the suspicious nature of this and previous fires at Rock Creek. Flowers stated that the

"plaintiff was called to the premises to fight the fire by the defendants. That is, the defendants specifically invited the plaintiff to come onto its premises, asked the plaintiff to perform a service there, and in all means consented to the plaintiff's presence on the premises at the time the plaintiff was injured. At that time, the defendants had reason to believe that there had been a number of fires in this apartment building, had reason to believe that the fires were of a dangerous nature, and had ample opportunity to take steps to prevent such fires. Due to this knowledge on behalf of the defendants, the express consent of the defendants, and the inviting of the plaintiff by the defendants to come upon the premises, the plaintiff should be afforded the status of invitee."

In ruling against Flowers, the trial court indicated that the case should not turn "on any distinction of status and concepts of property." Instead, the court sustained the demurrers because Flowers was injured while "in the process of fighting the fire." The circuit court recognized that

---

**2.** § 345 reads as follows:
"§ 345. Persons Entering in the Exercise of a Privilege
(1) Except as stated in Subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.
(2) The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee."
Comment *c* to § 345, however, recognizes an exception for firemen and policemen, stating that they "are commonly held by the courts to stand on the same footing as licensees."

the results may have been different if Flowers's injuries had occurred apart from firefighting, but held that, under the allegations, the injuries occurred in the course of fighting the fire. Flowers appealed to the Court of Special Appeals. In *Flowers v. Sting Security, Inc.*, 62 Md.App. 116, 488 A.2d 523 (1985), and in *Flowers v. Rock Creek Terrace Limited Partnership*, an unreported opinion, the Court of Special Appeals affirmed the trial court.

Subsequently, we granted Flowers's petition for a writ of certiorari which in substance set forth the following questions: (1) whether the fireman's rule should continue to be based on principles defining the liability of landowners and occupiers or should be grounded in public policy based on the services fire and police officers perform which include confronting certain risks on behalf of the public; (2) whether the circuit court properly granted defendants' demurrers in light of the facts alleged by the plaintiff.

## II.

The history of the fireman's rule in Maryland is like that in many other states. Earlier cases in this country involving firemen's attempts to recover for negligently caused injuries sustained while firefighting largely focused on the status of the firemen on the premises where the injuries occurred. These cases indicated that firemen came upon the premises under a privilege conferred by legal authority, and, not being invited by the landholder, took the property as they found it. Later cases, while still sounding in premises liability law, recognized that it is a fireman's job to fight fires, and as such he normally takes the risk of fire-related injuries which may be attributable to the landowner or occupier's negligence. Thus, whether purporting to apply premises liability law, or under a rationale based on the relationship between firemen and the public whom they serve, courts held that landowners and occupiers ordinarily owed firemen no duty of reasonable care.

The Court of Appeals of Maryland considered for the first time the duty owed to a firefighter in *Steinwedel v. Hilbert,* 149 Md. 121, 131 A. 44 (1925). Steinwedel, an employee of the Fire Insurance Salvage Corps of Baltimore, entered the premises leased by the defendant Hilbert to fight a fire and fell down an elevator shaft. Steinwedel's declaration charged negligence in leaving the elevator shaft open and unguarded. Hilbert demurred on the ground that he was under no duty to exercise reasonable care to keep the premises safe for a fireman or salvage corps employee entering to fight a fire. This Court agreed, holding that Hilbert was under no duty to Steinwedel to guard the elevator shaft. The Court, 149 Md. at 123–124, 131 A. 44, stated that

> "according to the great weight of authorities the general rule of common law is that a fireman entering premises to put out fire is a licensee only, and not an invitee, and that the owner or occupant of the premises is not under any duty of care to keep his premises prepared and safe for a fireman."

The Court went on to note that a fireman " 'is entitled only not to be led into danger, "something like fraud." ' " *Id.* at 124, 131 A. 44, quoting Pollock, Torts (11th ed.), 528. The Court concluded that there was no common law liability, as "there is no allegation that the elevator shaft was opened in or near a way prepared and set apart as a passage way, and the case is not rested upon any such concealment or deceptive appearance, 'something like fraud,' put in the path of the plaintiff, as would render the danger a trap." 149 Md. at 125, 131 A. 44.

More recently this Court examined the duty owed to a fireman in *Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965), and re-affirmed the result set forth in *Steinwedel.* In that case, Aravanis, a paid fireman for the Silver Spring Fire Department, responded to a fire at Eisenberg's home. The fire had started when Eisenberg knocked a tool off his work bench, with the tool hitting a jug of acetone which then burst. The acetone came in contact with the

flame of the pilot light of the hot water heater and ignited. Aravanis was attempting to extinguish the fire with a water hose when he was severely burned by a sudden flash. Aravanis alleged that he was not injured by the fire itself but by Eisenberg's negligent storage of acetone in an improper container. Aravanis argued that Eisenberg's negligence "put into operation an active, dangerous force which operated after the fire had started." 237 Md. at 254, 206 A.2d 148. The Court indicated that the merits of Aravanis's argument depended on whether the status of a fireman changes from licensee to invitee after the initial period of anticipated occupational risk of firefighting is over. The Court compared such a chronology-based change in status to the geography-based change in status recognized by the Restatement when a fireman is injured in common areas of the premises. Aravanis's position was that the occupational risk of firefighting was over after he had begun fighting the fire, and thus when the flash occurred Eisenberg owed him a duty to abstain from negligent conduct.[3] The question of whether a fireman's status can change when the initial period of occupational risks is over remained unanswered because the Court in *Aravanis* found that, even if Maryland law recognizes a chronological change in status, the trial court had given jury instructions in accordance with such change in status urged by the plaintiff.

In the course of addressing the plaintiff's claim of elevated status, the Court in the *Aravanis* case pointed out the nature of services performed by firemen (237 Md. at 250–251, 206 A.2d 148):

"When a fire department is called to fight a blaze, the cause of the blaze is immaterial. It may be the result of

---

**3.** It is difficult to ascertain what negligent conduct allegedly occurred after Aravanis had begun fighting the fire. Although it seems that Eisenberg's improper storage of acetone caused the fire in the first instance and would not be a subsequent act of negligence, the Court noted, 237 Md. at 254, 206 A.2d 148, that there was sufficient evidence to go to the jury on whether Eisenberg's failure "to keep the acetone in a proper container was negligence operative apart from the fire."

actual negligence on the part of the property owner, such as the dropping of a lighted match, or of his negligence in the maintenance of his property, as in permitting a known defective condition of the wiring to remain uncorrected. In either case, if the fireman is injured by the flames or gases of the conflagration, apart from unusual factors operative after the fire has begun, he can not recover. Fighting the fire, however caused, is his occupation. Compensation for injuries sustained in the fulfilment of his duties, absent other circumstances, is the obligation of society."

Thus, although the *Aravanis* decision purported to be grounded on the law of landowner's liability and the status of the plaintiff on the premises, the Court recognized the implications of a fireman's public function regardless of whether he was classified as a licensee or invitee upon the property. The Court went on to note that a fireman's occupation does not involve facing unlimited risks on behalf of the public (*id.* at 252, 206 A.2d 148):

"It is when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk, that the justice of continuing to regard him as a licensee only is questioned."

This Court addressed the matter most recently in *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978). Sherman, a police officer,[4] responded to a call from a bank where someone was attempting to pass a forged

---

**4.** All courts addressing the issue have taken the position that the standard of care owed to firemen applies equally to policemen. *See Sherman v. Suburban Trust Co.*, 282 Md. 238, 242, 384 A.2d 76 (1978); *Walters v. Sloan,* 20 Cal.3d 199, 202, 142 Cal.Rptr. 152, 571 P.2d 609 (1977) ("While denominated the fireman's rule, the rule is applicable to policemen as well"); *Steelman v. Lind,* 97 Nev. 425, 427 n. 2, 634 P.2d 666 (1981) (" 'Fireman's Rule' ... is applied to bar certain tort causes of action by firemen and policemen injured during the course of their hazardous occupations"); *Pottebaum v. Hinds,* 347 N.W.2d 642, 643 (Iowa 1984); *Hannah v. Jensen,* 298 N.W.2d 52 (Minn.1980); *Berko v. Freda,* 93 N.J. 81, 87, 459 A.2d 663 (1983).

check. While *Sherman* was inside a small teller's cage, a bank employee accidentally dropped the forged check on the floor. Sherman bent over to pick it up and struck his back on a coin changing machine. Chief Judge Murphy, speaking for the Court in *Sherman,* recognized the Court's position in *Aravanis* that, after the initial period of anticipated risk in fighting a fire, a firefighter or policeman may be entitled to ordinary due care. Sherman contended that, while the occupational risk of police work existed when he entered the bank, it was over when the injury occurred. The Court assumed the possibility of a change in status, but held that

> "Sherman was injured during, and not after, the initial period of his anticipated occupational risk, and from a hazard reasonably foreseeable as a part of that risk. He was not injured by reason of any active dangerous force unleashed on the premises after he entered upon the routine performance of his duties." *Id.* at 246, 384 A.2d 76.

In sum, under the foregoing cases, the owner or occupant of the premises is not under a duty of care to keep the premises prepared and safe for a fireman. The owner or occupant of the premises must, however, abstain from willful or wanton misconduct or entrapment. This encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn. Additionally, in some circumstances, when a fireman is outside of the anticipated occupational risk of fighting a fire he may be entitled to ordinary due care.

The above-cited Maryland cases, in our opinion, applied the proper standard of care owed to firemen and policemen, and the decisions were correct. Nevertheless, the use of a premises liability rationale would not seem to be entirely appropriate for resolving the issues in cases like this. A premises liability rationale does not encompass cases in which a fireman is injured by a fire caused by the negligence of someone other than the owner or occupier of the premises. In the present case, Westinghouse and Sting

Security are not landowners or occupiers but have invoked the fireman's rule. In addition, other public employees, such as postmen and building inspectors, are generally held to be entitled to due care even though their counterparts in the fire and police departments are not.[5] Nevertheless, postal workers and building inspectors, like firemen and policemen, often enter land pursuant to legal authority rather than expressed invitation. Nothing in traditional premises liability law, however, furnishes a ground for classifying some of these public employees as invitees and others as licensees. Moreover, although prior cases sounding in premises liability law had begun to define the extent to which firemen are deemed to anticipate certain occupational risks, the premises liability rationale itself does not provide a basis for delimiting the duties owed to firemen. Instead, it is an analysis of the relationship between firemen and the public whom they serve which best explains the fireman's rule.

Courts in other states have also questioned whether premises liability law is an adequate basis for the fireman's rule. Most have concluded that firemen do "not fit comfortably within the traditional concepts" of landowner liability. *Krauth v. Geller,* 31 N.J. 270, 272, 157 A.2d 129 (1960). *See, e.g., Pottebaum v. Hinds,* 347 N.W.2d 642, 645 (Iowa 1984) ("basing the fireman's rule on the status of the injured party would seem to unfairly limit the rule's application to the landowner/occupant context, thus denying liability for negligent acts of these individuals but not for others whose negligent acts injure police officers or firemen elsewhere"); *Calvert v. Garvey Elevators, Inc.,* 236 Kan. 570,

---

5. *See, e.g., Sutton v. Penn,* 238 Ill.App. 182 (1925) (rejecting contention that a mail carrier was a mere licensee indistinguishable from a policeman or fireman); *Gordon v. Cummings,* 152 Mass. 513, 25 N.E. 978 (1890) (postman may recover for injuries received when he fell into open elevator shaft); Annot. 21 A.L.R.3d 1099 (mail carriers); *Pickwick v. McCauliff,* 193 Mass. 70, 78 N.E. 730 (1906) (building inspector was invitee and could not be held as a matter of law to have assumed the risk of injury); Annot. 128 A.L.R. 1021 (building inspectors).

577, 694 P.2d 433 (1985) ("The Fireman's Rule in Kansas is not to be based upon 'premises law,' or categorizing fire fighters as mere licensees when performing their duties, but upon public policy"); *Armstrong v. Mailand*, 284 N.W.2d 343, 350 (Minn.1979) ("we conclude that firemen are not classified as licensees, invitees, or sui generis").

With few exceptions, courts elsewhere have retained the fireman's rule but have based the rule on public policy considerations.[6] Some of these courts emphasize a public policy somewhat analogous to the assumption of risk doctrine applied in negligence cases. Firemen are engaged by the public to encounter risks inherent in firefighting; they assume those risks, and therefore they should not recover for fire-related injuries. A leading case discussing this rationale for the fireman's rule is *Krauth v. Geller, supra,* 31 N.J. at 273–274, 157 A.2d 129, in which Chief Justice Weintraub stated for the court as follows:

"The rationale of the prevailing rule is sometimes stated in terms of 'assumption of risk,' used doubtless in the so-called 'primary' sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty.... Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for

---

**6.** Cases in two jurisdictions have rejected the fireman's rule and allow policemen and firemen to recover against those who fail to exercise reasonable care. *Kreski v. Modern Wholesale Elec. Supply Co.,* 151 Mich.App. 376, 390 N.W.2d 244 (1986); *Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210 (1984). On the other hand, some jurisdictions refuse to use a public policy rationale to extend the fireman's rule beyond traditional premises liability law. *See, e.g., Court v. Grzelinski,* 72 Ill.2d 141, 379 N.E.2d 281 (1978).

which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurences."

See *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 155, 571 P.2d 609, 612 (1977) ("one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby"); *Washington v. Atlantic Richfield Co.*, 66 Ill.2d 103, 109, 5 Ill.Dec. 143, 361 N.E.2d 282 (1976) ("the function of a fireman is to deal with fires, and he assumes the risks normally associated with that function when he enters upon that employment"); *C & O Railway Co. v. Crouch*, 208 Va. 602, 608, 159 S.E.2d 650, *cert. denied*, 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968) ("The assumption of risk doctrine employed in fire cases does not depend upon the existence of a spirit of venturesomeness in the face of known danger, as is true in automobile negligence cases, but rather upon the relationship between the fireman and the public, from which arises his obligation to accept the usual risks of injury in undertaking to suppress fires without regard to whether or not they are caused by negligence").

Many cases emphasize a public policy derived from the unique relationship between firefighters and the public. The courts reason that firemen cannot recover for negligence in starting fires because it is precisely their duty to take all reasonable measures to protect lives and property from fires. *Pottebaum v. Hinds, supra*, 347 N.W.2d at 645 ("since government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services"); *Calvert v. Garvey Elevators, Inc., supra*, 236 Kan. at 576, 694 P.2d 433 ("Fire

fighters are present ... because of the duty owed to the public as a whole"); *Buren v. Midwest Industries, Inc.,* 380 S.W.2d 96, 98 (Ky.1964) ("in the performance of his official function the fireman is a part rather than an object of fire prevention and control").

In addition, some courts have pointed out that firemen receive compensation, such as salary, workers' compensation, and special injury compensation, to fight fires for the public, and that taxpayers should not have to pay such moneys for the firefighting service and then be subject to liability if they call upon the service. *See Walters v. Sloan, supra,* 142 Cal.Rptr. at 155, 571 P.2d at 612 ("Firemen and policemen are paid for the work they perform including preparation for facing the hazards of their professions and dealing with perils when they arise. When injury occurs liberal compensation is provided"); *Steelman v. Lind,* 97 Nev. 425, 427, 634 P.2d 666 (1981) ("To allow actions by policemen and firemen against negligent taxpayers would subject them to multiple penalties for the protection"); *Krauth v. Geller, supra,* 31 N.J. at 274, 157 A.2d 129 ("the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling").

■ We agree that the fireman's rule is best explained by public policy. As pointed out in *Aravanis v. Eisenberg, supra,* 237 Md. at 251–252, 206 A.2d 148, it is the nature of the firefighting occupation that limits a firemar's ability to recover in tort for work-related injuries. Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if

injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

We reiterate, however, that firemen and policemen are not barred from recovery for all improper conduct. Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn.[7] They also may include acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his anticipated occupational hazards. As indicated by this Court in *Aravanis*, the fireman's rule should not apply "when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk," 237 Md. at 252, 206 A.2d 148. In these situations a fireman or policeman is owed a duty of due care.[8] More-

---

7. See, e.g., *Lipson v. Superior Court of Orange County*, 31 Cal.3d 362, 371, 182 Cal.Rptr. 629, 635, 644 P.2d 822, 828 (1982) ("the risk that the owner or occupier of a burning building will deceive a firefighter as to the nature or existence of a hazard on the premises is not an inherent part of a firefighter's job"); *Terhell v. American Commonwealth Associates*, 172 Cal.App.3d 434, 218 Cal.Rptr. 256, 260 (1985) ("Having an unguarded hole in the roof was not the cause of appellant's presence at the scene, and the firefighter's rule has never been applied to negligence which did not cause the fire"); *Johnson v. Miller*, 371 N.W.2d 94, 96 (Minn.App.1985) ("While smoke and other related conditions are risks reasonably to be anticipated by firefighters, a hole created by removal of a heating grate is not. That hole was a hidden or unanticipated risk"); *Clark v. Corby*, 75 Wis.2d 292, 298, 249 N.W.2d 567 (1977) ("We find the modern trend and the better rule to be that owners and occupiers of land owe a duty to firemen to warn them of hidden perils, where the owner or occupant knows of the peril and has the opportunity to give warning of it").

8. Courts have often applied these principles to find that various fact situations are outside of the fireman's rule. Without intimating any agreement or disagreement with the results in particular cases, some examples are *Garcia v. City of South Tucson*, 131 Ariz. 315, 319, 640 P.2d 1117 (1981); *Malo v. Willis*, 126 Cal.App.3d 543, 178 Cal.Rptr.

over, the fireman's rule does not apply to suits against arsonists or those engaging in similar misconduct.[9]

## III.

Turning to Flowers's allegations, we agree with the circuit court and the Court of Special Appeals that this action was precluded by the fireman's rule.

In count I Flowers alleged that Sting Security was negligent in "not hiring sufficient personnel to maintain proper and adequate security for the premises," in failing "to properly maintain and operate the television surveillance system [and] to close off and lock the service elevator during the evening hours," and in "failing and neglecting to provide proper supervision over its employees to prevent persons on the premises from being exposed to dangers of misconduct ... of its employees or others." In count II Flowers asserted that Larry W. Cline (allegedly the Sting Security guard on duty during the fire) negligently failed "to take such measures and care, including warnings and

---

774, 778 (1981); *Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 634, 644 P.2d 822, 827 (1982); *Griffiths v. Lovelette Transfer Co., Inc.,* 313 N.W.2d 602, 605 (Minn.1981); *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 905 (Minn.1984); *Trainor v. Santana,* 86 N.J. 403, 404–405, 432 A.2d 23 (1981); *Sutton v. Shufelberger,* 31 Wash.App. 579, 643 P.2d 920, 925–926 (1982).

**9.** *See, e.g., Grable v. Varela,* 115 Ariz. 222, 224, 564 P.2d 911 (1977) (recognized arsonist exception to fireman's rule); *Giorgi v. Pacific Gas and Electric Company,* 266 Cal.App.2d 355, 72 Cal.Rptr. 119, 123 (1968) ("We do not deal with the arsonist or with one who prankishly or maliciously turns in a false alarm"); *Pottebaum v. Hinds,* 347 N.W.2d 642 (Iowa 1984) (policeman may recover for intentional acts of misconduct); *Berko v. Freda,* 93 N.J. 81, 90, 459 A.2d 663 (1983) ("No fundamental unfairness results from allowing an officer to sue a criminal. The crook does not summon the police for help"); *Krauth v. Geller,* 31 N.J. 270, 157 A.2d 129 (1960) (suggests arsonists fall within an exception to the fireman's rule).

In the case at bar, although the declaration referred to prior fires of "suspicious" origin at the apartment building, there was no allegation that the fire giving rise to this lawsuit was intentionally started.

the provision of security ... calculated to provide safe and appropriate conditions on the premises for persons lawfully there" and failed "to refrain from engaging in conduct which would allow the initiation of a fire." Count III asserted that Sting Security was "strictly liable" for the alleged conduct of its employees. Counts IV and VI charged that Rock Creek "knew that there had been numerous fires of a suspicious nature at the premises which were believed to have been deliberately set" and failed "to provide adequate security measures to prevent similar conflagrations." Counts IV and VI also alleged that Rock Creek "failed to provide smoke detectors, sprinklers, and other safety apparatus in the common areas of its premises." Counts V and VII charged Rock Creek with failing "to take adequate and reasonable measures to prevent fires on its premises, thereby creating and maintaining a public nuisance." In count XVI, the plaintiff alleged that Rock Creek was strictly liable for "maintaining abnormally dangerous things on the premises" including gasoline and other combustible materials.

 The common denominator of the above-summarized counts is the allegation of negligence or other fault in causing or failing to prevent the fire which ultimately led to Flowers's injury. Recovery for this type of tortious conduct is precisely what the fireman's rule prevents. As previously discussed, firemen are engaged to fight fires for the public, and they enter upon dangerous circumstances without regard to whether the fire is attributable to otherwise tortious conduct. These claims sounding in negligence or strict liability in failing to prevent the fire are barred by the fireman's rule.[10]

---

10. The fact that an asserted basis for recovery may be couched in terms of strict liability rather than negligence does not, in itself, render the fireman's rule inapplicable. *Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 376, 182 Cal.Rptr. 629, 638, 644 P.2d 822, 831 (1982) ("the fireman's rule bars recovery on a theory of strict liability where the fireman sustains injuries as a proximate result of

 Count VIII charged Westinghouse with negligence in the design, manufacture and sale of the elevator system installed in the Rock Creek apartment building, and counts IX, X and XVI asserted that Westinghouse was liable for the allegedly dangerous and defective elevator system on breach of warranty and strict products liability theories. Flowers claimed the "elevator had inadequate fire proofing, including its doors or guards; did not have fireproofed braking apparatus, including fireproofed hoist cables, emergency cables, and/or governing cables; ... did not have a warning that the elevator was not fire proof and could fail in the event of a fire." Counts XI, XII, XIII and XIV alleged fraud and negligent misrepresentation by Rock Creek and Westinghouse for representing to Flowers "that the premises, including the operation and use of the elevator located thereon, were reasonably safe to the Plaintiff."

All of these allegations reflect the theory that Westinghouse and Rock Creek owed a duty to Flowers to maintain a reasonably fireproofed elevator system and to warn of potential malfunctions of the elevators in the event of a fire. Although these are not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting. *See Steinwedel v. Hilbert, supra,* 149 Md. 121, 131 A. 44. It is common knowledge that stairwells are to be used instead of elevators in case of fires; trained firemen must know of the risk that a fire may cause an elevator to malfunction. Moreover, an open elevator shaft is not a "hidden danger" of which firemen must be

---

the same ultrahazardous activity that causes the fire"); *Moreno v. Marrs,* 102 N.M. 373, 695 P.2d 1322, 1328 (1984) ("It makes no difference whether the theory for recovery is based on negligence, strict liability for an abnormally dangerous condition or strict products liability.") *See Armstrong v. Mailand,* 284 N.W.2d 343, 352 (Minn.1979).

warned. In Flowers's declaration, he alleged that he was evacuating tenants from a "hallway of a building where there was heavy smoke." An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties.[11]

In count XV, Flowers asserted that Rock Creek and Westinghouse owed a duty of care like that of a common carrier because they provided, maintained, and operated elevators at the apartment building. But the higher duty a common carrier owes extends only to its passengers. *Sheridan v. Balto. & Ohio R. Co.*, 101 Md. 50, 57, 60 A. 280 (1905). *See Jackson v. Hines*, 137 Md. 621, 626, 113 A. 129 (1921). The analogous higher duty owed by an elevator operator is to its passengers. *O'Neill & Company v. Crummitt*, 172 Md. 53, 60, 190 A. 763 (1937) ("the degree of care due by the owner of a passenger elevator to those who are expressly or impliedly invited to ride therein is similar to that which a common carrier owes its passengers"). Flowers was not a passenger in the elevator. Moreover, the higher duty owed to an elevator's passengers has no relationship to the anticipated risks which are inherent in the fireman's occupation.[12]

## JUDGMENTS AFFIRMED, WITH COSTS.

---

**11.** But *cf. Jackson v. Velveray Corp.*, 82 N.J.Super 469, 198 A.2d 115, 119 (1964).

**12.** Flowers in his brief also makes the bald assertion that the fireman's rule violates the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, because there is no rational basis to distinguish him from other citizens. The previously discussed public policies underlying the fireman's rule, however, provide a rational basis for distinguishing firemen and public safety officers from other citizens.