**Kenneth R. GILLESPIE et al.,
Appellants,**

**v.**

**Eleanora J. WASHINGTON, Administratrix of the Estate of Frederick Washington, Appellee.**

**No. 12780.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1978.

· Decided Nov. 6, 1978.

---

Robert Cadeaux, Washington, D. C., for appellants.

Joseph S. McCarthy, Washington, D. C., for appellee. Marion B. Phillips, Ronald A. Karp and Alexander L. Benton, Washington, D. C., entered appearances for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

MACK, Associate Judge:

Appellant challenges the decision of the trial court, granting a motion for summary judgment against him as plaintiff in this action for personal injuries. We affirm.

The relevant facts are these: On May 24, 1976, appellant was a member of the Metropolitan Police Department's Harbor Patrol. That day, he responded while on duty to a radio call requesting his assistance at the scene of a boating accident in the Anacostia River. The accident involved a boat owned and operated by Frederick Washington, M.D., which had overturned in the river after striking an abutment under the Benning Road Bridge. There was evidence that Dr. Washington, who died in the accident, may have been drinking and speeding at the time of the boat's striking the abutment. Appellant arrived at the scene of the accident and, together with another officer, went to work at uprighting the capsized boat, in order to free any remaining passengers. During appellant's attempted uprighting of the boat, its outdrive broke and fell into the river. In attempting to lift the outdrive from the river appellant allegedly injured his back. Appellant's action for personal injuries against the administratrix of Dr. Washington's estate ensued.

## I.

Appellant relies in large part on the doctrine of rescue in tort law for his contention that the granting of the motion for summary judgment by the trial court was erroneous. The rescue doctrine stands for the proposition that an individual injured while attempting to save others from imminent peril of harm or death may recover from one whose negligence caused the peril on which rescue was premised. See "Rescue Doctrine," 57 Am.Jur.2d Negligence § 227 (1971); "Danger Incurred to Save Life or to Prevent Personal Injury to Others," 65A C.J.S. Negligence § 124 (1966), and cases cited therein. It seems clear that the rescue doctrine applies even where the negligent party is the rescuee. Restatement (Second) of Torts § 445(d) (1965). Application of the rescue doctrine has avoided many of the preclusive effects, upon injured rescuers suing in tort law, of the rules regarding assumption of risk and contribu-

tory negligence. Under the rescue doctrine, an individual who exposes himself to the danger of injury while rescuing another from imminent peril of harm or death is not guilty of either assumption of risk or contributory negligence provided his act of rescuing is not of a rash or reckless kind under the standard of a reasonable person. *Cote v. Palmer*, 127 Conn. 321, 16 A.2d 595 (1940). Appellant therefore asks that his case be left for a jury to decide, based on a finding as to whether or not his injuries were proximately caused by negligent conduct of the decedent Washington, and whether or not his rescue attempts were occasioned by some imminent peril of harm or death to others.

■■■ Weighing against appellant's argument, however, is the "professional rescuer doctrine." This doctrine generally excludes from coverage under the general rescue doctrine those whose business it is to save lives and prevent injury to persons and property. It states that those engaged in rescue work as part of their employment may not, as a matter of law, recover for injuries sustained by them on the job, from those whose negligence was the proximate cause of the injuries. *Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254 (1975); *Black Industries, Inc. v. EMCO Helicopters, Inc.*, 19 Wash.App. 697, 577 P.2d 610 (1978). Under the professional rescuer doctrine, the professional rescuer is held to have assumed the risks attending his work. "Those dangers which are inherent in professional rescue activity, and therefore foreseeable, are willingly submitted to by the professional rescuer when he accepts the position and the remuneration inextricably connected therewith." *Maltman v. Sauer, supra* 84 Wash.2d at 978, 530 P.2d at 257. *See also Spencer v. B.P. John Furniture Corp.*, 255 Or. 359, 467 P.2d 429 (1970). The applicability of the professional rescuer doctrine to the instant case compels rejection of appellant's claim of recovery under the more general rescue doctrine. We therefore conclude that the granting of the motion for summary judgment against appellant by the trial court was correct.*

The professional rescuer doctrine serves an important purpose. It prevents the proliferation of suits in tort for injuries sustained in pursuit of regular, but inherently dangerous functions, conducted for the public safety. It also preserves the general rescue doctrine for application to the cases of those who attempt rescues ad hoc and without remuneration. The policy behind the professional rescuer doctrine as applied to firemen is well summarized by the Supreme Court of New Jersey, and we see no good reason why it should not be applied to policemen:

[I]t is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. [*Krauth v. Geller*, 31 N.J. 270, 273, 157 A.2d 129, 131 (1960).]

We hold that the policy behind the professional rescuer doctrine mandates an affirmance in the instant case.

■■■ In so holding, we do not mean to preclude recovery in all cases by those

---

\* We do not by our holding here mean to imply an adoption of the rescue doctrine in this jurisdiction. Rather, we conclude that, were the rescue doctrine the law of the District, appellant's claim, coming as it does under the professional rescuer exception to that doctrine, could not prevail.

bravely engaged in professional rescue operations from injuries sustained in connection with those operations. "Public servants, like firemen and police officers, we know, do not assume the risk of all injury in the course of their duties." *Carter v. Taylor Diving & Salvage Co.*, 341 F.Supp. 628, 631 (E.D.La.1972), aff'd, 470 F.2d 995 (5th Cir. 1973). We mean only to preclude recovery by professional rescuers for injuries occasioned by hazards which are neither hidden nor unknown to them in the course of their work, nor nonincidental to that work:

> We conclude that the proper test for determining a professional rescuer's right to recovery under the "rescue doctrine" is whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards. When the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff. [*Maltman v. Sauer*, *supra* 84 Wash.2d at 979, 530 P.2d at 257 (emphasis in original).]

The hazards of physical strain attending appellant's attempt to pull the outdrive from the water in order to upright the boat were clearly within the ambit of danger associated with his rescue activity. Appellant appeared to recognize this, as evidenced by remarks he made upon being deposed in the instant case:

> [APPELLANT GILLESPIE]: [O]ur biggest responsibility, or at least as far as I was concerned, was to make sure there wasn't someone trapped in the water, regardless of whether he was already dead or not. It didn't make any difference. Our [the Harbor Patrol's] job is to assist people in any way we can. If there had been someone trapped in the water, certainly it was our responsibility to give them aid. So we made an attempt to upright the boat, and we did upright it.

Since his injuries were sustained in the regular course of his professional rescue responsibilities, appellant may not recover in this case as a matter of law.

II.

Since appellant cannot recover as a matter of law under the professional rescuer doctrine, we do not reach the question as to whether his injury was proximately caused by some negligent act of the late Dr. Washington. We also do not reach appellant's contention, not raised before the trial court, that admiralty law operates in this case to preclude disposal of appellant's action for personal injury in a summary judgment based upon appellant's contributory negligence or assumption of risk. It is a well-established rule that a party who fails to raise an issue at trial generally waives the right to raise that issue on appeal. *Miller v. Avirom*, 127 U.S.App.D.C. 367, 370–71, 384 F.2d 319, 321–22 (1967). This rules applies specifically in a case of summary judgment. *Calhoun v. Freeman*, 114 U.S.App.D.C. 385, 387, 316 F.2d 386, 388 (1963).

The order of the trial court granting the motion of appellee for summary judgment is

*Affirmed.*