**Stephen M. LEE, Appellant,**

v.

**LUIGI, INC., Appellee.**

**No. 95–CV–827.**

District of Columbia Court of Appeals.

Argued May 9, 1996.

Decided June 26, 1997.

Stephen H. Ratliff, Washington, DC, for appellant.

John C. Lynch and Jack D. Lapidus, Washington, DC, for appellee.

Bruce J. Klores and Marc Fiedler, Washington, DC, filed an amicus curiae brief for the Trial Lawyers Association of Metropolitan Washington, D.C.

Before WAGNER, Chief Judge, and FARRELL, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

Appellant, Stephen M. Lee, a former member of the Metropolitan Police Department, filed this negligence action against appellee, Luigi, Inc., T/A Luigi's Restaurant (Luigi's) for damages for severe personal injuries sustained when he fell down a stairway inside Luigi's Restaurant while on duty and investigating a suspected burglary in response to an activated burglar alarm. Lee claimed that he was injured when he slipped and fell on a slippery substance while descending a cluttered stairway in the restau-

rant. The trial court granted summary judgment for Luigi's, holding that the claim was barred by the professional rescuer doctrine, which precludes those engaged in professions like police work from recovering damages for injuries sustained on the job as a result of hazards inherent in their work.[1] Lee argues that his claim is not barred by the doctrine because Luigi's negligence which caused his injuries was independent of the police work which he was performing. He argues alternatively that the *en banc* court should reject the professional rescuer doctrine and apply a standard of reasonable care under the circumstances applicable in cases of other public servants. *Amicus curiae*, the Trial Lawyers Association of Metropolitan Washington, D.C., contends that binding precedent in this jurisdiction already recognizes an independent negligence exception under which a cause of action is viable based on negligent conduct that is separate and distinct from that which initially created the need for the rescuer's services. We hold that the risk involved in this case was inherent and incidental to Lee's work, and therefore, his claim is barred by the professional rescuer doctrine. We find no factual basis upon which to consider an independent negligence exception. Therefore, we affirm.

## I.

On August 26, 1992, at approximately 8:30 a.m., Lee was on duty as a police officer when he responded to a dispatcher's call for an activated burglar alarm at Luigi's Restaurant located at 1132 19th Street, N.W. in the District. When Lee arrived, he checked and found that the front door and windows were secure with no evidence of tampering. Lee found the rear door to the restaurant open, and he called for police backup before going inside. He entered the restaurant with his service weapon drawn, and he found that the door leading to the kitchen was locked. Lee then went up the stairs leading to the second floor. The stairway had two flights and a landing, which were made of concrete with a metal ridge at the edge of each step. The restaurant used the stairway to store pizza boxes, laundry bags and fluorescent light covers. Lee had to negotiate his way around the boxes which were stacked on the landing and the first two steps of the second flight of stairs. At the top of the stairs on the second floor landing were stacked windows which Lee had to go around. He ascended the stairs and determined that another door was locked. By this time, other officers had arrived. Lee turned sideways to go around the stacked windows and started to holster his gun as he started to descend the stairs. His holster caught on one of the windows, and he slipped on an oily substance on the stairs and fell, striking his back. Lee sustained a severe lumbar strain, a herniated disc and a sprained ankle. Later, he had back surgery. He retired from the police department, as he was never able to return to work.

There was evidence that immediately before Lee's accident, the restaurant had been experiencing problems with the alarm system. According to the general manager, the alarm had been going off approximately every ten days for some time, and the police responded. The last time was within seven to ten days of the accident.

## II.

In reviewing a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Young, supra* note 1, 569 A.2d at 1175 (citing *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983)). The motion will be granted if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *American Continental Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C.1995) (citations omitted). Applying that standard, we conclude that the trial court properly granted Luigi's motion.

### A.  *The Professional Rescuer Doctrine*

■ The trial court held as a matter of law that Lee's claim is barred by the professional rescuer doctrine. This doctrine bars those engaged in rescue work as a part of their employment from recovering damages

---

1. *See Young v. Sherwin–Williams Co.*, 569 A.2d 1173, 1175 (D.C.1990).

for injuries sustained on the job as the result of the negligence of the person rescued. *Gillespie v. Washington*, 395 A.2d 18, 20 (D.C. 1978) (citations omitted). The rationale underlying the rule is that professional rescuers, such as police or firefighters, have assumed the risks inherent in the profession for which they are compensated by the public. *Young, supra* note 1, 569 A.2d at 1175 (citing *Gillespie*, 395 A.2d at 20). We have cited as a purpose for the doctrine, the deterrence of a proliferation of law suits for injuries sustained by civil servants in inherently risky undertakings for the public safety. *Id.; Young, supra* note 1, 569 A.2d at 1175. The rescue doctrine is reserved for volunteers who risk their safety in efforts to rescue others.[2] *Gillespie*, 395 A.2d at 20.

Lee argues that he was not engaged in rescue activity at the time he was injured. He contends that he had completed his professional duties when he fell as a result of Luigi's maintenance of a dangerous condition on the stairway. Therefore, he argues, the trial court misapplied the doctrine in granting summary judgment for Luigi's. Luigi's argues that the risk of injury to Lee was inherent in the work.

■ We have recognized that police and firemen "do not assume the risk of all injury in the course of their duties." *Gillespie, supra*, 395 A.2d at 21. Only those injuries resulting from obvious dangers, those known to the rescuer during their course of work, or incidental to their work, bar recovery. The test is

> whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards. When the injury is the result of a hazard general-

ly recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff.

*Id.* (quoting *Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254, 257 (1975)).

**B.** *The Scope of Lee's Rescue Activity*

■ Unquestionably, Lee was performing his police responsibilities when he entered Luigi's premises to look for burglars or signs of burglary. The investigation necessitated that he look in various areas of the restaurant, as he did. That he had completed his examination of the door at the top of the stairs before he fell does not show that his police business on the premises was at an end, as he contends. To perform the investigation, he not only had to ascend the stairs, but descend them as well. Nor does the fact that other officers arrived on the scene change the purpose of Lee's presence in Luigi's premises at the time that he fell. Lee seeks to draw too narrowly the scope of the work incident to the performance of his "rescue" activity.

In *Gillespie, supra,* and *Young, supra,* this court considered whether the activity which caused a rescuer's injury was incidental to the work. In *Gillespie*, a member of the police harbor patrol responded to the scene of a boating accident. While attempting to upright the boat, its outdrive broke and fell in the river. In a suit against the estate of the deceased victim, the harbor policeman claimed that he injured his back while attempting to lift the outdrive from the river. There was evidence that the victim piloting the boat may have been drinking and speeding at the time of the accident. We rejected the argument that the risk of physical strain in lifting the outdrive from the water was not within the ambit of the rescue activity. *Gillespie*, 395 A.2d at 21. Concluding that Gillespie's injuries were sustained in the course of his professional responsibilities, this court

**2.** The rescue doctrine allows an individual injured while attempting to rescue another from peril to recover in tort from the person whose negligence caused the situation. *Gillespie, supra*, 395 A.2d at 19. It precludes defenses against the volunteer rescuer of assumption of the risk or

contributory negligence "provided [the] act of rescuing is not of a rash or reckless kind under the standard of a reasonable person." *Id.* at 20 (citing *Cote v. Palmer*, 127 Conn. 321, 16 A.2d 595 (1940)).

held that the professional rescuer doctrine barred recovery. *Id.*

In *Young, supra,* a fireman sought to avoid the bar of the professional rescuer doctrine, contending that the rescue efforts which led to his injuries were outside the ambit of his customary firefighter's duties as a pump driver. In that case, a truck driver hit the guardrail on the 11th Street bridge, and the cab of the truck was left hanging over the edge of the ramp. The driver's door opened, and he clutched the steering wheel, dangling fifty feet in the air, before falling on the firefighter who held out his arms to try to catch him. *Young, supra* note 1, 569 A.2d at 1174. The firefighters had been called to the scene because of a report of a truck fire, and they found a small grass fire. When the firefighter saw the truck driver hanging perilously, he tried to get a piece of canvass to catch him, but the driver fell before he could do so. *Id.* at 1175. Both men sustained injuries when the driver fell on the firefighter. The firefighter sued both the driver and his employer.[3] We rejected Young's argument that he was not acting within the scope of his duties as a firefighter when he attempted the rescue. *Id.* It was Young's position that the determinative issue was whether the rescue efforts were "within the firefighter's specific duties in the company." *Id.* at 1176. This court considered more broadly the scope of the duties for purposes of the professional rescuer doctrine. Observing that the life-threatening danger with which Young was confronted was not an unknown hazard to the firefighter and that attempting to save a life, not extinguishing the small fire, was the natural first priority, we concluded that Young was within the scope of his duties for purposes of the doctrine. *Id.* at 1176.

In light of *Gillespie* and *Young,* we must reject Lee's claim that his police responsibilities were at an end by the time he descended the stairs of the premises where he was investigating for a burglary. In order to conduct the investigation, Lee had to go to various areas in the restaurant and leave those areas. He was leaving an area that he had investigated, and was still inside the restaurant, when he sustained the fall. Contrary to Lee's position, the restaurant could not be secured finally until the police left the premises. On these facts, it cannot be said that Lee was not within the ambit of his police activities in light of our case precedents.

However, Lee argues that his injuries, unlike those of the plaintiffs in *Gillespie* and *Young,* proximately resulted from the negligence of Luigi's in maintaining the stairway in a dangerous condition, and not risks associated with the reason for his presence. For this reason, he contends that the professional rescuer doctrine should not apply. We have not restricted application of the doctrine only to those risks associated with the reason for the rescuer's presence. *See Young, supra* note 1, 569 A.2d at 1178; *Gillespie, supra,* 395 A.2d at 21. While the doctrine may not preclude recovery for hidden or unknown hazardous conditions, foreseeable risks are within the parameters of the professional's work, and such risks will not support a claim for recovery.[4] *Id.* We are not persuaded that any hidden hazard can be gleaned from this record. The condition of the stairs was there for Lee to observe, which he did on the way up. Moreover, police may reasonably expect that property owners may use portions of their premises to store items and that they may not keep them

---

**3.** There was evidence that the driver was intoxicated at the time of the accident, and the firefighter contended that the employer was negligent in failing to investigate the driver's background, which would have disclosed the driver's alcohol and reckless driving problems.

**4.** Lee and *amicus* would change the meaning of a "hazard ... within the scope of dangers identified with the particular rescue operation," *Gillespie, supra,* to something much narrower, *i.e.,* only the hazard that creates the need for the officer's presence. This limitation would make

the independent negligence exception largely supplant the rule. For example, here only Luigi's negligence in maintaining the burglar alarm, which apparently caused the officer's presence on the premises, would be shielded by the doctrine. Any other negligence causing injury to the officer while performing his duties there would be actionable—even though the hazard that caused the negligence was "inherently within the ambit of those dangers," *id.,* associated with police entry into a storage area closed to the public. We reject any such broad exception.

litter-free for those not expected ordinarily to enter those areas of the property. *See Rosa v. Dunkin' Donuts of Passaic,* 122 N.J. 66, 583 A.2d 1129 (1991).

In *Rosa,* Officer Rosa responded to a call for emergency medical assistance for a sick employee at Dunkin' Donuts. While he was carrying the unconscious employee of the restaurant on a stretcher to the ambulance, Officer Rosa's foot slipped on a white powdery substance on the kitchen floor. *Rosa,* 583 A.2d at 1130. The officer filed a negligence action against the restaurant. The appellate court affirmed the trial court's grant of summary judgment for the defendant on the grounds that the fireman's rule (professional rescuer doctrine) precluded recovery. *See also Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987) (fireman's rule barred recovery where a volunteer fireman fell twelve stories down an open elevator shaft while responding to a fire in the building); *Maryland Cas. Co. v. Heiot,* 224 N.J.Super. 441, 540 A.2d 920 (1988) (rule barred recovery to an injured firefighter who slipped on icy steps while responding to an emergency medical call from the owner of the premises); *Williams v. Levitt,* 213 N.J.Super. 604, 517 A.2d 1242 (1986) (rule barred recovery to a police officer who was injured by falling into a hole in the owner's yard while investigating a burglar alarm at the home).[5]

### C. *Independent Negligence Exception*

 Lee and amicus urge the adoption of the independent negligence exception to the professional rescuer doctrine. This exception allows recovery when the professional rescuer's injury is caused by an act of negligence independent from the circumstances which occasioned his presence at the scene of the rescue. *See Young, supra* note 1, 569 A.2d at 1179 (citing *Terhell v. American Commonwealth Assocs.,* 172 Cal.App.3d 434, 438, 218 Cal.Rptr. 256 (1985)); *see also* 62 Am.Jur.2d *Premises Liability* § 435 (1990) (footnote omitted). However, there is authority which precludes the exception where the injury results from only ordinary negligence. *Id.* (citing *Williams, supra,* 517 A.2d at 1242; *Kreski v. Modern Wholesale Elec. Supply Co.,* 429 Mich. 347, 415 N.W.2d 178 (1987)). In this case, no more than ordinary negligence is claimed. Moreover, as previously stated, we are persuaded that cluttered conditions in parts of the restaurant used for storage and not open to customers, is a risk reasonably associated with police entry for the search of a citizen's property. Therefore, even assuming that an independent negligence exception to the professional rescuer doctrine should be adopted, it is not appropriate to the facts of this case.

*Amicus* contends that this jurisdiction has already adopted the exception. It cites *Scottish Rite Supreme Council v. Jacobs,* 105 U.S.App. D.C. 271, 266 F.2d 675 (1959), which would be binding precedent under our decision in *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). In *Scottish Rite,* it was alleged that a property owner had knowingly left a *dangerous concealed* condition on its premises, an uncovered shaft, through which a fireman fell while fighting a fire. 105 U.S.App. D.C. at 271, 266 F.2d at 675. The District of Columbia Circuit Court affirmed judgment for the fireman, concluding that the injuries were not caused by or connected with the fire. The per curiam opinion is without further explication; however, it is clear that an extremely dangerous and concealed condition, known to the owner, was involved. Such a hazard is not involved here; therefore, even if we were to assume for the sake of argument that amicus is right, *Scottish Rite* is inapplicable to change the result we reach today.

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*[6]

---

5. By statute, New Jersey has abolished the fireman's rule. N.J. Stat., § 2A:62A–21 (1994).

6. Finally, Lee asks the court to abolish the professional rescuer doctrine, which, as he recognizes, only the *en banc* court can do. *See M.A.P.,*

*supra*, 285 A.2d at 312.   Therefore, we do not   address the issue.