KRISTOPHER R. BENEFIEL

v.

CHARLES A. WALKER, ET AL.

Record No. 911716

DONALD RUBEN SHELTON

v.

MARK THOMAS OVERSTREET, ET AL.

Record No. 920002

November 6, 1992

Present: All the Justices

.

*Gary V. Davis* for appellant. (Record No. 911716)

*Thomas M. Wochok* for appellee Charles Allen Walker. (Record No. 911716)

*Katherine M. Fogarty (Miller, Miller, Kearney & Geschickter*, on brief), for appellee Nationwide Mutual Insurance Company. (Record No. 911716)

*Kenneth C. King, Jr. (Steven L. Higgs; King & Higgs*, on briefs), for appellant. (Record No. 920002)

*Thomas W. Farrell (David B. Hart; Wooten & Hart*, on brief), for appellees. (Record No. 920002)

*Amicus Curiae:* Virginia State Police Association (Michael A. Kernbach; Lou Ann K. Behan; Koonz, McKenney, Johnson & DePaolis, on brief). (Record No. 920002)

JUSTICE WHITING delivered the opinion of the Court.

In these two appeals, we examine the scope of a common-law doctrine known as the "fireman's rule," which limits a defendant's tort liability for otherwise culpable injuries to firemen and policemen.[1]

## I.

On September 6, 1988, Kristopher R. Benefiel, a Fairfax County police officer, was injured when a car driven by Charles A. Walker struck the rear of his cruiser. Benefiel sued Walker.

The motion for judgment and Benefiel's answers to Walker's interrogatories allege that Benefiel had stopped a motorist on Route 7 in Fairfax County for making an illegal "U-turn"; that both vehicles were parked, facing west, against the curb on the north side of Route 7 in Fairfax County, with Benefiel's cruiser behind the motorist's vehicle; that Benefiel was seated in his cruiser filling out a traffic summons; and that Walker, negligently driving west in the northernmost lane of Route 7, struck the rear of Benefiel's cruiser, injuring Benefiel.

Relying on Benefiel's motion for judgment and Benefiel's answers to interrogatories, Walker, asserting the immunity of the fireman's rule, moved for summary judgment. The trial court sustained the motion and entered summary judgment for Walker. Benefiel appeals.

---

[1] Neither party relies upon the provisions of Code § 8.01-226. Code § 8.01-226, as it was in force at the time of these incidents, affected only the duties of landowners or occupiers of premises to "law-enforcement officers and firefighters." After the incidents occurred, this section was amended to provide that "[w]hile otherwise engaged in the performance of his duties, a law-enforcement officer or firefighter shall be owed a duty of ordinary care."

## II.

On October 22, 1987, Donald Ruben Shelton, a captain of the Roanoke City Fire Department, was injured when a fire truck in which he was riding was struck by a car driven by Mark Thomas Overstreet, who was on business for the car's owner, Fulton Motor Company, Inc. (Fulton). Shelton sued both parties, charging ordinary negligence in Overstreet's failure to keep a proper lookout at the intersection.

At a jury trial, Shelton's evidence indicated that he was seated in the passenger's seat of the fire truck as it was being driven to a fire with its emergency lights, horn, and siren in operation. As the fire truck proceeded through an intersection in the City of Roanoke, Fulton's car, driven by Overstreet, struck the side of the fire truck, injuring Shelton.

After Shelton's evidence was presented to a jury, the trial court sustained the defendants' motion to strike Shelton's evidence on the ground that the fireman's rule precluded a recovery against them. Thereafter, the trial court entered summary judgment for the defendants. Shelton appeals.

## III.

To resolve the issues in these cases, we examine our significant applications of the fireman's rule and the reasons given therefor. The fireman's rule was first applied in a case in which a fireman died as a result of burns received while fighting a fire that the defendant had negligently started on its right-of-way. *Chesapeake & Ohio Ry. Co. v. Crouch*, 208 Va. 602, 608-609, 159 S.E.2d 650, 655, *cert. denied*, 393 U.S. 845 (1968).

We based our application of the fireman's rule on two grounds. First, because we concluded that injury or death from burns was a usual hazard of fighting a fire, we held that it was a risk assumed by the fireman. We did not premise this assumption of risk upon "the existence of a spirit of venturesomeness in the face of known danger, . . . but rather upon the relationship between the fireman and the public, from which arises his obligation to accept the usual risks of injury in undertaking to suppress fires." *Id.* at 608, 159 S.E.2d at 654. In later cases in other jurisdictions, this obligation of a fireman is described as an assumption of risk in the "primary" sense of the term, which means

"that the defendant did not breach a duty owed, rather . . . that the fireman was guilty of contributory fault in responding to his public duty . . . . Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence . . . he cannot complain of negligence in the creation of the very occasion for his engagement."

*Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 445, 520 A.2d 361, 367 (1987) (quoting *Krauth v. Geller*, 31 N.J. 270, 273-74, 157 A.2d 129, 131 (1960)).[2]

■ Secondly, we said that it was logical to apply the fireman's rule in cases in which a landowner or occupier (occupier) had negligently started a fire, because thereafter the occupier had temporarily lost all control of his property and was unable to protect himself against the fireman's assumption of the "usual hazards" of fighting the fire. *Crouch*, 208 Va. at 609, 159 S.E.2d at 655.

Referring to other courts' descriptions of this rule of limited liability thus available to a defendant who culpably started a fire, we said that

[w]here liability was found, the emphasis was said to be not upon culpability with respect to the inception of the fire, but rather upon fault in creating undue risks of injury, that is, *risks beyond those inevitably involved in firefighting* . . . . Or, as differently expressed in another case: [the issue is whether a fireman was] "subjected to risks not inevitable or inherent in fighting the fire of that kind and extent."

*Id.* at 607, 159 S.E.2d at 653-54 (quoting *Jackson v. Velveray Corp.*, 82 N.J. Super. 469, 478, 198 A.2d 115, 121 (1964)) (emphasis added).

We next applied the fireman's rule in separate cases in which a fireman and a policeman were injured when responding to emergencies on the defendants' premises. After referring to *Crouch*, we

---

[2] A "secondary" assumption of risk has been described as that in which: "A plaintiff may also be said to assume a risk . . . when [he] deliberately chooses to encounter that risk," 4 Fowler V. Harper et al., *The Law of Torts* § 21 at 189 (1986), and "the plaintiff is aware of the risk that has already been created by the defendant's negligence and, yet, he voluntarily encounters it." Craig E. Clark, Note, *Kreski v. Modern Wholesale Electric Supply Co.: Barring the Tort Claims of Fire Fighters and Police Officers*, 1988 3 Det. C.L. Rev. 767, 771 n.28.

noted that we had not previously dealt with the extent of an occupant's liability to firemen or policemen for injuries "resulting from risks *beyond* those inherently involved in firefighting or police work." *Pearson v. Canada Contracting Co.*, 232 Va. 177, 182, 349 S.E.2d 106, 110 (1986) (emphasis added).

In *Pearson*, the injuries arose from dangerous conditions that had existed on the defendants' premises prior to the origination of the emergencies which brought these officials to the premises. *Id.* at 179-81, 349 S.E.2d at 109. In holding that the defendants were not liable to these officials, we did not base our decision upon their assumption of a risk inherently involved in firefighting and police work.[3] Rather, we premised our decision upon the limited liability of an occupier under these circumstances.

▪ After noting the additional classifications of persons who enter another's premises—trespassers, licensees, or invitees—in relation to an occupier's varying duty of care to those parties, we held that firemen and policemen, while in the performance of their duties, were in a class of their own when entering those areas of the premises not open to the public. We then delineated the following "rule of limited [occupier] liability" to the parties:

> [W]here an owner or occupier knows or has reason to know of a dangerous condition and knows or has reason to know of the presence on the premises of an officially privileged person whom the owner or the occupier knows or has reason to know is unaware of the danger, he owes a duty to use reasonable care to make the condition safe or to warn that person of the danger.

*Id.* at 184, 349 S.E.2d at 111.

▪ We said that two fundamental policies justified this rule of limited liability in the context of occupier liability to such injured parties. First, firemen and policemen are compensated for such injuries by workers' compensation. Second, and "more important," unlike licensees and invitees, firemen and policemen enter the

---

[3] This conclusion is consistent with the statement in W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 61 at 431 (5th ed. 1984):

> [T]he fireman's rule has been held only to apply when the firefighter or police officer is injured from the very danger, created by the defendant's act of negligence, that required his professional assistance and presence at the scene in the first place, and the rule will not shield a defendant from liability for independent acts of misconduct which otherwise cause the injury.

premises at unforeseeable times and go upon areas not open to the public. *Id.* A recent treatise on torts suggests that the second is the "most legitimate" basis for the rule. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61 at 431-432 (5th ed. 1984).

Our next mention of the fireman's rule was in *Commonwealth v. Millsaps*, 232 Va. 502, 509-10, 352 S.E.2d 311, 315 (1987). There, the Commonwealth sued a motorist to recover the damage to a state police cruiser that had been struck by the defendant's vehicle. The cruiser was being used by a state trooper in an effort to stop the defendant, who had been driving in a reckless manner and at an excessive rate of speed.

We decided *Millsaps* on the issue of the unavailability of the rescue doctrine to excuse the trooper's voluntary assumption of the risk. However, we pointed out that there was no allegation or proof that the defendant's negligence subjected the trooper "to undue risk beyond that inherently involved in the normal pursuit of his police duties. . . . Therefore, the [trial] court, on the record before us, might have found that [the trooper] had assumed the risk as a matter of law, pursuant to the 'fireman's rule' adopted in *Crouch.*"[4] *Id.* at 510, 352 S.E.2d at 315-16.

Thus, we have never considered the fireman's rule in a case similar to these cases. Specifically, these defendants were not occupiers of the premises where the emergencies arose, as in *Pearson*, nor did their alleged acts of ordinary negligence cause the emergency that brought a fireman or a policeman to the scene, as in *Crouch* and *Millsaps*.

However, relying primarily on *Crouch* and *Millsaps*, the defendants contend that if such negligence is foreseeable in the performance of police and firefighting duties, it is a "risk inherently involved in the normal pursuit" of their duties, which they assume in performing those duties.[5] We do not think that either case supports their argument.

---

[4] In *Millsaps*, we noted that the Commonwealth offered no instructions on the subject of Millsaps' possible willful and wanton conduct, and that it "neither alleged nor sought to prove that Millsaps' negligence subjected [the trooper] to undue risk beyond that inherently involved in the normal pursuit of his police duties so as to make assumption of risk a jury issue." 232 Va. at 510, 352 S.E.2d at 315.

[5] In the *Shelton* case, the defendants note the testimony of two firemen describing the risk of third parties colliding with a fire truck while it is responding to a fire as one of the ordinary risks encountered in responding to a fire. The plaintiff did not object to this testimony.

If the defendants' contention were correct, we simply would have applied the immunity provided by the *Crouch* decision in deciding *Pearson*. Certainly the risk of dangerous premises on which the emergencies arose in *Pearson* would have been one more closely related to these officials' duties than the risk of third-party negligence on the way to a fire, as in Shelton's case, or at the scene, as in Benefiel's case. Yet, we indicated that the *Pearson* risks were "risks beyond those inherently involved in firefighting or police work." 232 Va. at 182, 349 S.E.2d at 110. It should also be noted that in *Pearson*, as in these cases, the injuries were not a direct result of the emergency that brought the fireman or policeman to the scene of their injury, as were the injuries in *Crouch* and *Millsaps*.

█ We note that all the other jurisdictions that have considered the matter have excluded from the protection of the fireman's rule third parties whose negligent acts did not give rise to the emergency and who were not occupiers of the premises where the emergency arose and the injuries occurred. *Garcia v. City of South Tucson*, 131 Ariz. 315, 319, 640 P.2d 1117, 1121 (Ct. App. 1982); *Shaw v. Plunkett*, 135 Cal. App. 3d 756, 759, 185 Cal. Rptr. 571, 572-73 (1982); *Walters v. Sloan*, 20 Cal. 3d 199, 202 n.2, 571 P.2d 609, 610 n.2, 142 Cal. Rptr. 152, 153 n.2 (1977); *Steelman v. Lind*, 97 Nev. 425, 426, 634 P.2d 666, 666 n.1 (1981); *Sutton v. Shufelberger*, 31 Wash. App. 579, 587-88, 643 P.2d 920, 926 (1982); *see Pottebaum v. Hinds*, 347 N.W.2d 642, 647-48 (Iowa 1984); *Lang v. Glusica*, 393 N.W.2d 181, 183 (Minn. 1986).

In the only case cited by the defendants in support of their argument for third-party immunity, the New Jersey Supreme Court, using essentially the ''most important'' rationale articulated in *Pearson*, confined its holding upon the defendant-occupier's limited premises liability to a policeman injured on its premises during the emergency condition arising out of the illness of the defendant's employee. *Rosa v. Dunkin' Donuts of Passaic*, 122 N.J. 66, 73, 583 A.2d 1129, 1132 (1990) (''It contravenes good sense and good policy to hold property owners liable to prepare for such unexpected arrivals''). In neither of the present cases can the defendants claim the benefit of any such premises liability rationale.

Moreover, the court in *Rosa* indicated that it would adhere to an earlier New Jersey decision which noted that ''when a defendant's

However, if this risk is not one covered by the fireman's rule, this evidence cannot change the law. *See Grace Sec. Corp. v. Roberts*, 158 Va. 792, 821, 164 S.E. 700, 710 (1932) (parties cannot change law by their stipulation or statement).

clearly 'subsequent act of negligence' injures the police officer or firefighter," the fireman's rule is inapplicable. 122 N.J. at 73, 583 A.2d at 1133-34. Thus, even under the New Jersey Court's approach, the doctrine would be inapplicable in these cases since there can be little doubt that these defendants are charged with acts of negligence subsequent to that giving rise to the emergency.

■ Applying *Crouch* and *Millsaps*, we hold that the risks of the injuries inflicted by the third parties in these cases were not risks inherent in either plaintiff's employment.

## IV.

Benefiel's pleadings and answers to interrogatories indicate that Walker's negligence was an independent act of negligence of a third party, unrelated to the reason Benefiel stopped the motorist. Accordingly, the trial court erred in sustaining Walker's motion for summary judgment. Therefore, the judgment will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

## V.

Shelton's evidence was sufficient to create a jury issue as to whether Overstreet was negligent in failing to keep a proper lookout for the approaching fire truck. This evidence also established that any such negligence was an independent act of a third party at a place remote from the situs of the fire and unrelated to the cause of the fire. Hence, the trial court erred in applying the fireman's rule, in sustaining the defendants' motions to strike Shelton's evidence, and in entering summary judgment for the defendants. Accordingly, the judgment will be reversed and the case will be remanded for further proceedings consistent with this opinion.

Record No. 911716—*Reversed and remanded.*
Record No. 920002—*Reversed and remanded.*

JUSTICE COMPTON, with whom JUSTICE LACY joins, dissenting.

Recently, this Court said that "it has not been the policy of the law of Virginia to facilitate litigation by [policemen and firemen] as

a means of compensating them for injuries received in the line of duty, but rather to impose that burden on the public generally, through workers' compensation and other benefits.'' *Commonwealth* v. *Millsaps*, 232 Va. 502, 509, 352 S.E.2d 311, 315 (1987) (citing *Pearson* v. *Canada Contracting Co.*, 232 Va. 177, 184-85, 349 S.E.2d 106, 111 (1986)). In *Millsaps*, a property-damage claim on behalf of the Commonwealth, the Court stated, ''we perceive no logical basis for a distinction between damage to public property and injuries to public officers.'' *Id.* Thus, the Court, adhering to precedent, reaffirmed the principle as follows: ''Under the 'fireman's rule,' such officers are held, as a matter of law, to assume the risks of injury occasioned by ordinary negligence inherently involved in the normal pursuit of their duties.'' *Id.* at 509-10, 352 S.E.2d at 315 (citing *Chesapeake & Ohio Ry. Co.* v. *Crouch*, 208 Va. 602, 608-09, 159 S.E.2d 650, 654-55, *cert. denied*, 393 U.S. 845 (1968)). The Court pointed out that this settled rule ''is based upon the officer's relationship with the public, from which arises his obligation to accept the usual risks inherent in his duties, whether caused by negligence or not.'' *Millsaps*, 232 Va. at 510, 352 S.E.2d at 315.

In the present cases, the majority has departed from precedent in a hairsplitting discussion relying on cases from foreign jurisdictions. In one case, we have a policeman injured while engaged in enforcing the traffic laws. In the other case, we have a fireman injured in responding to a fire. In my opinion and to paraphrase *Millsaps*, both injuries were occasioned by ordinary negligence inherently involved in the normal pursuit of both plaintiffs' public duties. No logical distinction properly can be drawn between the activities of these two public officers at the times of their injuries and the activity of the policeman at the time of the property damage in *Millsaps*.

Accordingly, I would affirm the judgments of the respective trial courts.