Isadore MELTON, Appellant,

v.

CRANE RENTAL COMPANY,
Appellee.

No. 98–CV–1469.

District of Columbia Court of Appeals.

Argued Sept. 27, 1999.
Decided Dec. 16, 1999.

Joseph H. Green, Jr., Silver Spring, MD, for appellant.

Robert L. Hebb, Baltimore, MD, for appellee.

Before STEADMAN and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

WASHINGTON, Associate Judge:

The primary issue on appeal is whether this jurisdiction will recognize an exception to the Professional Rescuer's Doctrine [1] (doctrine) for independent acts of negligence. Appellant, Isadore Melton, challenges the trial judge's grant of summary judgment in favor of Crane Rental Company (Crane). The trial judge ruled that the doctrine barred a tort action by Melton for injuries sustained in a traffic accident while Melton was acting within the scope of his employment as an emergency medical technician (EMT). Melton argues that the trial court erred in ruling that the doctrine applied because Crane was a third party unrelated to the rescued victim and the negligent act was independent from the emergency to which Melton

---

1. "The doctrine bars those engaged in rescue work as part of their employment from recovering damages for injuries sustained on the job as the result of negligence of the person rescued." *Lee v. Luigi,* 696 A.2d 1371, 1373–74 (D.C.1997) (citing *Gillespie v. Washington,* 395 A.2d 18, 20 (D.C.1978)).

was responding. We agree, reverse the trial court's decision, and remand.

## I. FACTUAL SUMMARY

On June 2, 1996, Melton and another EMT, Hassan Umarani, responding to an emergency, were transporting a pregnant woman to the hospital. Melton was stationed in the rear of the ambulance attending to the rescued party, and Umarani was driving the ambulance. The ambulance was traveling south on Vermont Avenue, N.W. with its emergency lights and siren activated. Melton attests that the ambulance came to a complete stop at the intersection of Vermont Avenue and L Street, N.W. Melton further asserts that all vehicles stopped for the ambulance, except for a truck crane owned and operated by Crane. The truck crane struck the ambulance. Melton sustained permanent injuries from the accident.

## II. STANDARD OF REVIEW

We review the grant of a motion for summary judgment *de novo* and apply the same standard as the trial court when initially considering the motion. *Lee, supra* note 1, 696 A.2d at 1373. "The motion will be granted if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted); Super. Ct. Civ. R. 56(c).

## III. ANALYSIS

This court has addressed the scope and applicability of the doctrine previously in three cases, *Gillespie*,[2] *supra* note 1, *Young v. Sherwin-Williams, Inc.*,[3] 569 A.2d 1173 (D.C.1990); and *Lee*,[4] *supra* note 1. In those cases, this court developed and applied the test for determining under what circumstances the doctrine bars recovery by a professional rescuer for injuries sustained within the course of his/her employment. In *Gillespie*, we held that the proper test for determining whether the doctrine applies to bar recovery by a professional rescuer is "whether the hazard ultimately responsible for causing the injuries is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity." *Gillespie, supra* note 1, 395 A.2d at 20–21. In all three cases we recognized that the legal underpinning of the doctrine was to prevent the proliferation of suits in tort by rescuers in inherently dangerous jobs because they "have assumed the risks inherent in the profession for which they are compensated by the public." *Lee, supra* note 1, 696 A.2d at 1374 (citations omitted).[5] However broad that underlying policy appears to be, this court in *Gillespie* also declared that "[professional rescuers] ... do not assume the risk of all injury in the course of their duties." *Gillespie, supra* note 1, 395 A.2d at 20–21 (citations omitted). In those cases, this court applied this narrower assumption of risk analysis and determined

**2.** Application of the doctrine prohibited recovery by a harbor patrol police officer, who was injured while attempting to upright a capsized boat, against the estate of the deceased owner who may have been drinking and speeding at the time the boat struck an abutment.

**3.** Application of the doctrine prohibited recovery by a firefighter who was injured by his attempt to catch a truck driver as he fell fifty feet from a bridge. The suit against the employer, for negligently hiring a driver with a history of drinking, was barred under the doctrine.

**4.** Application of the doctrine prohibited recovery by a police officer who was injured in a fall on the stairway of a restaurant while investigating a suspected burglary in response to an activated burglar alarm.

**5.** Although not expressly documented in any of the three cases in this jurisdiction, it is also well recognized public policy that the doctrine seeks to prevent a chilling effect that may occur if citizens in need of help were not free to solicit the assistance of professional rescuers for fear of tort liability. *See, e.g., Lanza v. Polanin*, 581 So.2d 130, 132 (Fla. 1991).

that the doctrine properly precluded recovery because there existed a definite connection between the negligent act which gave rise to the injury and the rescued person[6] and/or the situs[7] of the emergency; and thus the injuries sustained were "uniquely associated" to the "particular emergency." Although there was discussion about a possible independent tort exception to the doctrine in both *Young* and *Lee*, this court reserved judgment on the issue because the exception was not applicable to the facts of either case. This case presents us with the first real opportunity to explore the limits of the doctrine with respect to injuries caused to professional rescuers by the independent negligence of unrelated third parties.[8] In this case, unlike in *Gillespie, Young*, and *Lee*, there is no nexus between the injuries suffered by the rescuer and the negligence of the rescued party either personally or at the site of the rescue.

Our neighboring jurisdictions, Maryland and Virginia, both recognize an exception to the doctrine based on independent acts. *See Tucker v. Rio Vista Plaza*, 354 Md. 413, 731 A.2d 884 (1999); *Benefiel v. Walker*, 244 Va. 488, 422 S.E.2d 773 (1992). In *Tucker*, the Maryland court rejected the notion that the doctrine should be understood under a transactional approach, that "[a]ny injury which occurred during the entire transaction of responding to the call must be within the scope of the fireman's rule." *Tucker, supra*, 731 A.2d at 888 (internal quotation marks omitted). This holding is particularly relevant to the facts of the present case because it demands that a negligent act have a significant connection to the emergency, something more than the fortuitous chance that the negligent act occurred during the scope of the rescuer's employment. Accordingly, the fact that the EMT was en route to the hospital when the accident transpired would be insufficient, alone, to invoke the doctrine.

The Supreme Court of Virginia, likewise, acknowledges an exception to the doctrine based on independent acts of a third party or subsequent negligent acts. The factual scenario in *Benefiel* is, for the most part, identical to the facts of the instant case, and the reasoning utilized in *Benefiel* is helpful in justifying the recognition of an exception based on independent acts of negligence in the District. In *Benefiel*, a fireman injured while riding on a fire truck that was struck by another motorist was not precluded from bringing an action in tort. The Virginia court expresses that "[a] plaintiff may be said to assume a risk [ ] when [he/she] deliberately chooses to encounter that risk." *Benefiel, supra*, 422 S.E.2d at 775 (citing 4 FOWLER V. HARPER, ET AL., THE LAW OF TORTS § 21 at 189 (1986)). The case further explains that "the plaintiff is aware of the risk that has already been created by the defendant's negligence and, yet, he voluntarily encounters it ." *Id.* (citation omitted).

6. In *Gillespie, supra* note 1, the harbor officer's injuries were sustained while attempting to save the party responsible for capsizing the boat.

In *Young, supra*, it was asserted that because the suit was brought against a negligent third party who was not the rescuee, then the exception to the doctrine was actuated. However, this court found that the third party's negligent hiring of a truck operator with a history of drinking was part of the same chain of events that lead to the creation of the risk. The association between the employer and the employee who caused the accident was akin to a theory of respondeat superior. Thus, the court found a relationship between the negligent act and the rescued party.

7. In *Lee, supra* note 1, there was no relationship between the rescuer's injuries and the burglary to which the officer responded. However, this court did find that the injury was sustained on the premises of the restaurant, the scene of the emergency.

8. It is important to note that the crane operator was a third party and was not associated with the emergency. There may very well be an instance in which a third party is affiliated with the emergency, and thus the negligence of that related third party may be protected under the doctrine.

*Benefiel* carefully distinguished "between those situations where the injury occurred from the very circumstance which gave rise to the emergency and those circumstances where the negligent act was subsequent to that giving rise to the emergency." *Irby v. Doe*, 46 Va. Cir. 323 (1998). Moreover, the court in *Benefiel* speaks directly to our conclusion in the present case, that some nexus is required between the negligence and the emergency via either a connection with the negligent person rescued or situs of the emergency.

Specifically, these defendants were not occupiers of the premises where the negligence arose, ... nor did their alleged acts of ordinary negligence cause

the emergency that brought a fireman or a policeman to the scene, ....

*Benefiel, supra,* 422 S.E.2d at 776. It is the final decision of the Virginia court that the risk of injury by a third party is not a risk inherent in a rescuer's employment shielded under the doctrine. Therefore, the negligence of a third party at a place remote from the situs and unrelated to the cause of the emergency is independent and an exception to the doctrine. *See id.* at 777. Maryland and Virginia are not alone in adopting an independent tort exception to the doctrine. In fact, we know of no other jurisdiction that has failed to recognize such an exception to the doctrine,[9] and Crane could not proffer an authority from any jurisdiction to the contrary.[10]

---

9. The court in *Benefiel,* when considering the application of the doctrine to independent acts of negligence, was advised of the law in other jurisdictions:

> All other jurisdictions that have considered the matter have excluded from the protection of the fireman's rule third parties whose negligent acts did not give rise to the emergency and who were not occupiers of the premises where the emergency arose and the injuries occurred.

*Benefiel, supra,* 422 S.E.2d at 777 (citing *Garcia v. City of South Tucson,* 131 Ariz. 315, 319, 640 P.2d 1117, 1121 (Ct.App.1982)); *Shaw v. Plunkett,* 135 Cal.App.3d 756, 759, 185 Cal.Rptr. 571, 572–73 (1982); *Steelman v. Lind,* 97 Nev. 425, 426, 634 P.2d 666, 666 n. 1 (1981); *Sutton v. Shufelberger,* 31 Wash. App. 579, 587–88, 643 P.2d 920, 926 (1982); *see Pottebaum v. Hinds,* 347 N.W.2d 642, 647–48 (Iowa 1984); *Lang v. Glusica,* 393 N.W.2d 181, 183 (Minn.1986)). *See also Harris–Fields v. Syze,* 461 Mich. 188, 600 N.W.2d 611 (1999); *Schreiber v. Cherry Hill Construction Co.,* 105 Md.App. 462, 660 A.2d 970, *cert denied,* 340 Md. 500, 667 A.2d 341 (1995); *Boyer v. Anchor Disposal,* 135 N.J. 86, 638 A.2d 135 (1994); *Aetna Cas. & Sur. Co. v. Vierra,* 619 A.2d 436, 439–40 (R.I.1993); *Duda v. Griffin,* 165 A.D.2d 298, 300, 567 N.Y.S.2d 194 (1991); *Lanza, supra* note 5.

10. Crane relies on *Rosa v. Dunkin' Donuts,* 122 N.J. 66, 583 A.2d 1129 (1991), as authority supporting the application of the doctrine in a circumstance of negligence unrelated to the emergency that necessitated the officer's presence on the scene. However, Crane gives too little note to the importance of the slip and fall occurring on the premises of the donut shop—the scene of the incident. Fur-

ther, the decision in *Rosa* was later reversed by the New Jersey Legislature, indicating that fairness and public policy exact a more restricted interpretation of the doctrine.

Crane also proffers a Michigan Court of Appeals case, *Harris–Fields v. Syze,* 229 Mich. App. 195, 581 N.W.2d 737 (1998), as authority supporting the application of the doctrine to an independent negligent act by an unrelated third party. However, the Supreme Court of Michigan overruled the Court of Appeals in *Harris–Fields, supra* note 9. In *Harris–Fields,* a police trooper was struck and killed by a vehicle as he issued a citation on the shoulder of the road. The Court of Appeals in *Harris–Fields* precluded recovery based on the fact that the case involved a claim of only ordinary negligence. However, as previously stated, this decision was overruled, and the Supreme Court of Michigan held that "[t]he fireman's rule does not bar an action in a case such as this in which the alleged negligence of the defendant was unrelated to the events that brought the officer to the location where the injury occurred," without demanding more than a claim of ordinary negligence. *Harris–Fields v. Syze, supra* note 9, 461 Mich. at 189, 600 N.W.2d 611. Like New Jersey, the Michigan Legislature enacted a statute, MICH. COMP. LAWS § 600.2967 (1998), instructing that a firefighter or police officer may recover damages, in certain circumstances, for injuries sustained while acting in his or her official capacity. In particular, recovery is allowed if the injury was caused by a person's ordinary negligence, and the negligent person is not someone whose act resulted in the rescuer's presence at the emergency.

■ Although EMT's regularly ride in emergency vehicles as part of their employment obligations, the fact that the emergency vehicle might become involved in a traffic accident is not a risk associated with the reason for the rescuer's presence at the scene. "[Melton] may have exposed himself to the risk of [vehicular traffic], but he has not consented to relieve a [third party of] any future duty to act with reasonable care."[11] W. PAGE KEETON ET AL., *supra* note 11, § 68, at 485. Crane owed Melton a duty of reasonable care and any question as to the propriety of allowing recovery to an EMT in an emergency vehicle, authorized to travel against the normal dictates of traffic laws, is a question of contributory negligence and not assumption of risk.[12] Nothing precludes Crane from arguing that the operation of the emergency vehicle was not reasonable under the circumstances and the jury finding Melton contributorily negligent. *See Sutton, supra* note 9, 643 P.2d at 925.

■ It is precisely because a professional rescuer can not be held to assume all risks that the doctrine envisions some nexus between the rescuee, the specific rescue activity, and the negligent act causing injury. Therefore, the only activities that the doctrine seeks to immunize from liability are those negligent acts that occasioned the professional rescuer's presence at the scene. *See Harris–Fields, supra* note 9, 461 Mich. at 197, 600 N.W.2d 611. The absence of such a nexus, in effect, would immunize all negligent and reckless conduct by third parties based solely on status distinctions. The test as announced in this court's decisions in *Gillespie* and *Lee* is consistent with this limited interpretation of the doctrine.[13]

Accordingly, this case is hereby

*Reversed and remanded.*

11. "Knowledge of the general danger may not be enough." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68, at 489 (5th ed.1984). Assumption of risk requires knowledge and consent, that "an individual had knowledge of a danger and voluntarily acquiescence in it." *Id.*

12. A pedestrian who walks down the street in the middle of a block, through a stream of traffic traveling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple. It is not assumption of the risk. And if A leaves an automobile stopped at night on the travelled portion of the highway, and his passenger remains sitting in it, it can readily be found that there is consent to the prior negligence of A, ... but not to the subsequent negligence of B, who thereafter runs into the car from the rear.
W. PAGE KEETON ET AL., *supra* note 11, § 68, at 485 (footnotes omitted).

13. The test in *Gillespie* and *Lee* is stated in the affirmative and clearly demands a more limited inquiry on the question of negligence. "Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of *the negligence which created the actual necessity for exposure* to those hazards." *Gillespie, supra*, 395 A.2d at 21 (citations omitted) (emphasis added). Importantly, the paraphrased test as expressed in *Gillespie* and *Lee* excludes negligent acts that were not the cause or connected to the cause of the accident the professional rescuer responded to.