Joseph JUVENALIS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 05–CV–650.

District of Columbia Court of Appeals.

Argued Sept. 26, 2007.

Decided Aug. 28, 2008.

Anitha Johnson, for appellant.

Mary L. Wilson, Senior Assistant Attorney General, with whom Linda Singer, Acting Attorney General of the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant Joseph Juvenalis appeals a judgment on the verdict denying his recovery for injuries he sustained as a pedestrian in an automobile accident involving a Metropolitan Police Department ("MPD") van. The jury found that he assumed the risk of the accident despite determining that the MPD officer driving the van was negligent. The issue before us on appeal is whether the jury should have been given the assumption of risk jury instruction. We conclude that it was reversible error to give the jury the assumption of risk jury

instruction. By basing its verdict on the determination that Mr. Juvenalis assumed the risk, the jury failed to consider whether Mr. Juvenalis was contributorily negligent or whether the MPD officer had the last clear chance to avoid the accident, which would have potentially permitted Mr. Juvenalis to recover damages despite his own negligence. Accordingly, we reverse the verdict and remand the case for a new trial.[1]

### I.

On July 13, 1998, Mr. Juvenalis walked out from an alley in the 1500 block of U Street, NW and attempted to cross the middle of the street without using the crosswalk. Several witnesses including Joyce Bryant, Ali Abdi, Bernie Huber, and Officer Wayne Sullivan, who was driving the MPD van that hit Mr. Juvenalis, saw him in the street standing on the double yellow line. Ms. Bryant testified that she slowed down and ultimately stopped her car because she saw Mr. Juvenalis in the street, and he appeared to be disoriented "turning backwards and forwards and twisting and turning, as if he did not know what to do." Mr. Abdi, a restaurant owner sitting outside at his sidewalk café, saw the MPD van and said it was speeding right before it hit Mr. Juvenalis.

Officer Sullivan testified that he saw Mr. Juvenalis standing in the street from three to five car lengths away. He also stated that he lost sight of Mr. Juvenalis and assumed that he had crossed the street.

Then, suddenly, he heard the sound of his vehicle hitting Mr. Juvenalis. The impact of the collision caused Mr. Juvenalis's body to be thrown into oncoming traffic, and he landed on the hood of Ms. Bryant's car before sliding to the ground. As a result of the collision, Mr. Juvenalis sustained permanent bodily injury and incurred medical expenses.

Mr. Juvenalis's medical records indicated that his blood alcohol level was greater than 0.28 grams/100 ml on the night of the accident. The District of Columbia's ("the District") expert witness in toxicology and pharmacology testified that such an impaired individual would not be able to appreciate or "know" the danger he was actually in. According to the expert, a person in that condition would have a decreased ability, as compared to an unimpaired individual, to "appropriately make reasoned decisions" and to process and rationally interpret multiple sensory inputs, such as sight and sound. He went so far to say that most people with the same blood alcohol level as Mr. Juvenalis would be unconscious.

After the close of all evidence, the parties discussed applicable jury instructions. The District requested that the trial court give jury instructions on both assumption of risk and contributory negligence. Mr. Juvenalis objected to the assumption of risk jury instruction. When the court asked the basis for his objection, Mr. Juvenalis's counsel argued that giving both contributory negligence and assumption of

---

1. Mr. Juvenalis argues that the reversible error in this case warranted a judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial. While we ultimately agree that a new trial is required, we conclude that Mr. Juvenalis did not preserve this issue sufficiently to warrant a JNOV. Although Mr. Juvenalis filed a motion for a JNOV, he did so on different grounds than he is now claiming on appeal. We have held

that Super. Ct. Civ. R. 50 is strictly construed and " 'the failure to include a particular ground in a motion for directed verdict will bar the consideration of this ground [both] in a subsequent motion for judgment notwithstanding the verdict' and on appeal." See Daka, Inc. v. McCrae, 839 A.2d 682, 691 (D.C.2003) (quoting Howard Univ. v. Best, 547 A.2d 144, 147 (D.C.1988)).

risk instructions would be duplicative, "like wearing both a belt and suspenders," and therefore, both should not be submitted to the jury. The trial court overruled the objection stating, "at first I did not think assumption of risk applied" but then concluded that "anytime someone stands in the middle of the street trying to cross . . . a jury could find that [assumption of the risk applied]." Then, the parties discussed the "last clear chance" doctrine, and the court stated, "[Mr. Juvenalis,] I figured you would [want the 'last clear chance' jury instruction]. If I'm giving assumption of risk, I think last clear chance. Any objection?" Neither party objected to the instruction.

■■■■ The court provided the parties with a copy of the jury verdict form, to which neither objected, with the following questions: (1) Was the police officer negligent?; (2) Was his negligence the cause of the injuries?; (3) Did Mr. Juvenalis contribute to his injury?; and (4) Did Mr. Juvenalis assume the risk? The verdict form further instructed: "Only if the jury finds that assumption of risk is involved," should they answer question (5) Did the officer have the last clear chance to avoid the incident?[2] Finally, the verdict form instructed the jury to indicate the amount, if any, of an award.

Both parties gave their closing arguments. Mr. Juvenalis's counsel focused on the "last clear chance" doctrine and explained to the jury, "you will notice from these [jury] instructions even if [Mr. Juvenalis] assumed [the] risk of being in harms way and was contributor[ily] negligent, the District of Columbia still is liable if the officer had a last clear chance to avoid the accident." He laid out the reasons why the officer had the last clear chance to avoid the accident. The District, in its closing argument contended the officer was not negligent, but even if he was, then Mr. Juvenalis was contributorily negligent or alternatively assumed the risk. Then, the District argued, "now we get to . . . the Doctrine of Last Clear Chance as [Mr. Juvenalis's] counsel has introduced to you." The District went on to argue that the requirements of the doctrine had not been met. Neither party made clear in their closing argument that the "last clear chance" theory was not applicable if the jury found Mr. Juvenalis had assumed the risk of his injuries. *See Johnson, supra* note 2, 726 A.2d at 175–76.

After closing arguments, the trial judge gave jury instructions explaining the applicable traffic regulations in the District, the assumption of risk doctrine, the contributory negligence doctrine, and the "last clear chance" doctrine. The judge then

**2.** This portion of the jury verdict form is contrary to the law in the District, which makes clear that assumption of risk relieves a defendant of any duty of care owed to a plaintiff, and therefore, a defendant cannot be held liable for negligence based upon the "last clear chance" doctrine. *See, e.g., Washington Metro. Area Transit Auth. v. Johnson,* 726 A.2d 172, 175–76 (D.C.1999) (en banc) ("last clear chance" may not be invoked to render defendant liable when plaintiff assumed the risk and relieved defendant of any duty owed). The "last clear chance" doctrine applies when: (1) the plaintiff was in a position of danger caused by the negligence of both the plaintiff and the defendant; (2) the plaintiff was oblivious to the danger or unable to extricate himself from the position of danger; (3) the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of his obliviousness to it, or of his inability to extricate himself from it; and (4) the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and of his inability to extricate himself from it, but failed to do so. *Hall v. Carter,* 825 A.2d 954, 958 (D.C.2003) (citing *District of Columbia v. Huysman,* 650 A.2d 1323, 1326 (D.C.1994)) (other citation omitted)

gave the jury a revised jury verdict form.[3] In responding to the questions on the revised verdict form, the jury determined that Officer Sullivan was negligent in operating the MPD van, by answering "yes" to Question # 1. The jury also answered "yes" to Question # 2 regarding whether Mr. Juvenalis had assumed the risk of the accident. Following the instructions on the revised jury verdict form, the jury did not go on to answer questions # 3 and # 4 regarding contributory negligence and "last clear chance," respectively. Mr. Juvenalis filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial, which the trial court denied. This appeal followed.

## II.

■■■ On appeal, Mr. Juvenalis argues that the trial court erred in giving the assumption of risk jury instruction because, at the time of the accident, he was undisputedly intoxicated and therefore could not have voluntarily exposed himself to danger. Mr. Juvenalis, however, did not make this objection at trial. Generally, we are reluctant to reverse a trial court on issues not squarely raised or to which objections were not made, because the purpose of Super. Ct. Civ. R. 51 is to allow a trial judge the opportunity to reconsider and, if necessary, correct the instructions. *Ceco Corp. v. Coleman*, 441 A.2d 940, 947 (D.C.1982) (citations omitted). However, we may reverse a judgment on the basis of an incorrect instruction, notwithstanding the

lack of a sufficient objection, under the plain error standard "where it is apparent from the face of the record that a miscarriage of justice has occurred." *District of Columbia v. Banks*, 646 A.2d 972, 978 (D.C.1994) (quoting *Weisman v. Middleton*, 390 A.2d 996, 1000 (D.C.1978) (citations and internal quotation marks omitted)); *see also* Super. Ct. Civ. R. 51(d) (court may consider plain error in instructions affecting substantial rights even when the error has not been preserved). On a plain error review, an appellant must demonstrate that the objectionable action was "(1) error, (2) that [was] plain, (3) that affect[ed] substantial rights, and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *Thomas v. District of Columbia*, 942 A.2d 645, 650 (D.C.2008); *Marquez v. United States*, 903 A.2d 815, 817 (D.C.2006) (citing *United States v. Olano*, 507 U.S. 725, 732–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *see also Newell v. District of Columbia*, 741 A.2d 28, 34 (D.C.1999) (noting that claims of instructional error raised for the first time on appeal are reviewed for plain error).

## A.

■■■ At oral argument, the District conceded that the trial judge erred as a matter of law by instructing the jury on assumption of risk. Although the District conceded error, it argued that reversal was not warranted. The District argued that

---

3. The trial court revised the jury verdict form because it realized the original was incorrect. The court stated that if Mr. Juvenalis assumed the risk of his injury "the case was over." Therefore, the court revised the verdict form to allow the jury to consider the "last clear chance" doctrine only if the jury made two findings: (1) that Mr. Juvenalis had *not* assumed the risk of his injury, and (2) that Mr. Juvenalis *was* contributorily negligent. Not-

withstanding that this revised jury verdict form correctly stated the relationship between assumption of risk and the "last clear chance" doctrine, under the facts of this case, the assumption of risk instruction should not have been given to the jury or included on the verdict form. Thus, the jury verdict form, which correctly stated the interrelationship between both doctrines should not have been given due to the facts of this particular case.

since the jury found Mr. Juvenalis had assumed the risk of his injury, the jury undoubtedly would have found, based upon the same evidence, that Mr. Juvenalis was contributorily negligent. In addition, the District contends that the "last clear chance" jury instruction should not have been given because there was no evidence to support it. Thus, in the District's view, a finding of contributory negligence— which the District argued would have been a foregone conclusion—would have ended the inquiry and barred recovery. We disagree.

 "Assumption of risk, like contributory negligence, is an affirmative defense in negligence cases and may operate as a complete bar to liability." *Dennis v. Jones,* 928 A.2d 672, 676 (D.C.2007); *see also Morrison v. MacNamara,* 407 A.2d 555, 566 (D.C.1979). The two defenses are very similar, "overlapping but not always congruent," because each bars recovery on a different theoretical footing. *See Dennis, supra,* 928 A.2d at 676; *Johnson, supra,* 726 A.2d at 175; *Janifer v. Jandebeur,* 551 A.2d 1351, 1352 (D.C.1989); *Sinai v. Polinger Co.,* 498 A.2d 520, 524 (D.C. 1985); *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C.1980). "While assumption of risk focuses on the plaintiff's subjective knowledge of the existence of the risk and his voluntary assumption of it ... contributory negligence focuses on the objective reasonableness of the plaintiff's conduct." *Dennis, supra,* 928 A.2d at 677 (internal quotation marks and citations omitted). Contributory negligence is found where "the plaintiff, by encountering the risk created by the defendant's breach of duty, departed from an objective standard of reasonable care." *Id.* (quoting *Sinai, supra,* 498 A.2d at 524). In contrast, assumption of risk is found when a plaintiff "elects to proceed in the face of a known danger," and thus is regarded as "having consciously relieved the defendant of any duty" that he otherwise owed to a plaintiff. *Sinai, supra,* 498 A.2d at 524. "Being under no duty, the defendant may not be charged with negligence." *Id.*

In *Melton v. Crane Rental Co.,* 742 A.2d 875, 879 (D.C.1999), we addressed a similar issue, where we concluded that contributory negligence and not assumption of risk was the proper doctrine to apply when a rescue worker was injured by a third party driving a truck while the worker was inside an ambulance. *Melton* caused us to revisit the interplay of contributory negligence and assumption of risk.[4] *Id.* at 875. While we noted that the rescue worker may have exposed himself to the risk of vehicular traffic due to the nature of his employment, we held that he did not consent to relieve a third party (the driver of the truck that collided with the ambulance) of any future duty to act with reasonable care. *Id.* at 879. We determined that "any question as to the propriety of allowing recovery to [the rescue worker] in an emergency vehicle, authorized to travel against the normal dictates of traffic laws, *is a question of contributory negligence and not assumption of risk." Id.* (emphasis added). In footnote 12, we endorsed the proposition that "a pedestrian who walks down the street in the middle of a block, through a stream of traffic traveling at excessive speed, cannot by any stretch of the imagination be found to have con-

---

4. We noted that, although the Professional Rescuer's Doctrine bars those engaged in rescue work from recovering for injuries they sustained as the result of negligence of the person rescued because professional rescuers assume the risk that is inherent in their job for which they are compensated by the public, the doctrine does not limit rescuers from pursuing claims against third parties for their negligence not related to the rescue. *Melton, supra,* 742 A.2d at 875.

sented that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple. It is not assumption of the risk." *Id.* at 879 n. 12 (quoting W. Prosser & W. Keeton, *The Law of Torts* § 68, at 485 (5th ed.1984)).

As in *Melton,* although Mr. Juvenalis may have exposed himself to the risk of vehicular traffic by crossing mid-street, he did not waive Officer Sullivan's duty to act with reasonable care and holding otherwise would relieve Officer Sullivan of his duty to use ordinary care, in contravention of our traffic regulations. The trial court instructed the jury that

> [t]he law requires both drivers and pedestrians using a public roadway to use ordinary care. Drivers must use ordinary care to avoid injuring others. Pedestrians must use ordinary care to protect their own safety.... While a driver may assume that others will use ordinary care and obey the law, *the driver*

*may not, for that reason, fail to exercise ordinary care.*

Because the trial court instructed the jury that "these regulations establish the applicable standard of care" and the standard established is an objective one, the jury needed to decide the issues of contributory negligence and "last clear chance." Under the traffic regulations, a driver may not fail to exercise ordinary care even when a pedestrian fails to do so. Even if Mr. Juvenalis acted negligently, Officer Sullivan was not relieved of his duty to exercise ordinary care. An assumption of risk jury instruction, which would waive the officer's duty to use ordinary care, is inapplicable to the facts of this case.[5] Therefore, the trial court erred when it gave the assumption of risk instruction on which the jury relied to bar Mr. Juvenalis's recovery.

### B.

In order to determine whether the error was plain, the error must have been obvious or readily apparent, and

---

5. In *Scoggins,* we held, as a policy matter, that assumption of risk should not apply when it would implicitly undermine District of Columbia regulations. 419 A.2d at 1004–05; *see also Jarrett v. Woodward Bros., Inc.,* 751 A.2d 972, 987 (D.C.2000) (precluding a tavern keeper's liability based upon intoxicated underage patron's assumption of the risk would relieve it of its statutory duty and strike at the heart of the legislature's intent to prevent liquor licensees from permitting intoxicated or underage patrons from drinking). However, we also noted that there may be a valid hybrid of contributory negligence and assumption of risk. *Scoggins, supra,* 419 A.2d at 1004. This occurs when a plaintiff voluntarily exposes himself (assumption of risk) to an unreasonable risk (contributory negligence). *Id.* We characterized this hybrid of voluntary unreasonable conduct as a "species" of contributory negligence. *Id.* We held that as a matter of public policy the landlord of sub-standard low-income housing may not assert as a defense that a tenant assumed the risk of living there because that would under-

mine the policy implicit in the Housing Regulations. *Id.* at 1004–05. A contributory negligence defense rather than an assumption of risk defense is applicable in the landlord-tenant context where there is sufficient evidence that a tenant "unreasonably increased the exposure he or she otherwise would have had to danger created by a landlord's failure to comply with the Housing Regulations." *Id.* at 1005.

Even if we were to employ the hybrid approach and find that Mr. Juvenalis voluntarily exposed himself to the unreasonable risk of crossing the street outside the crosswalk while cars were passing, according to *Scoggins,* the analysis would still be under the theory of contributory negligence. The District may not assert as a defense that Mr. Juvenalis assumed the risk of crossing the street because our traffic regulations require the driver of an automobile to exercise ordinary care even where a pedestrian does not. To hold otherwise would undermine the policy of our traffic regulations.

clear. *Headspeth v. United States*, 910 A.2d 311, 318 (D.C.2006). This requires a determination of whether the claimed error was clearly at odds with established and settled law. *Wheeler v. United States*, 930 A.2d 232, 245 (D.C.2007). We have held in our prior cases that contributory negligence is founded on the theoretical footing of an objective reasonableness test to determine fault. *See Dennis, supra*, 928 A.2d at 676; *Sinai, supra*, 498 A.2d at 524. Alternatively, assumption of risk is founded on a theory of waiver or consent instead of fault. *Id.* If there is a "blending" of the two defenses then the proper theory for analysis is contributory negligence. *See Scoggins, supra*, 419 A.2d at 999. Our traffic regulations also make clear that assumption of risk is inapplicable in this type of situation. Contributory negligence was the appropriate doctrine to apply under the facts of this case. Accordingly, we conclude that the error, which allowed the jury to decide this case on assumption of risk, was clear at the time of trial.

### C.

 Having concluded that giving the assumption of risk jury instruction was clear error, we next need to determine whether the error affected Mr. Juvenalis's substantial rights. To satisfy this portion of the plain error test, Mr. Juvenalis must show "a reasonable probability [that] the errors had a prejudicial effect on the outcome of his trial." *Thomas, supra*, 942 A.2d at 650 (citation omitted); *see also Byrd v. United States*, 614 A.2d 25, 30 (D.C.1992) ("reasonable probability does not mean certainty").

Mr. Juvenalis's substantial rights were violated because the jury was never adequately instructed on the differences between the assumption of risk and contributory negligence doctrines. Reviewing the record as a whole, based upon the parties' colloquy with the judge; the judge's instruction to the jury; and counsels' closing arguments to the jury, the distinction between the theories barring recovery under assumption of the risk and contributory negligence was not made clear to the jury. Before closing argument, the trial court discussed with the parties the "last clear chance" jury instruction and stated it would give the instruction because it was giving the assumption of risk instruction. The original jury verdict form, as read by the judge to counsel prior to closing arguments, stated, "only if the jury finds that assumption of risk is involved, [should the jury consider whether] the officer had the 'last clear chance' to avoid the incident." This is an incorrect statement of law because the "last clear chance" doctrine does not apply to the defense of assumption of the risk. *See Johnson, supra*, 726 A.2d at 178 (the "last clear chance" doctrine may not be invoked to render defendant liable for plaintiff's suicidal act; by purposely inviting harm that resulted, suicide victim relieved defendant of any duty he otherwise owed her).

Then in closing arguments, both parties combined the two defenses when discussing how the "last clear chance" doctrine applied to Mr. Juvenalis's ability to recover damages. Counsel for Mr. Juvenalis focused on the "last clear chance" doctrine and explained to the jury, "you will notice from these [jury] instructions [that] even if [Mr. Juvenalis] assumed the risk of being in harms way and was contributor[ily] negligent, the District still is liable if the officer had a last clear chance to avoid the accident." Likewise, the District explained that it did not think the officer was negligent, but if he was, then Mr. Juvenalis was contributorily negligent or *alternatively* assumed the risk and the officer did not have the last clear chance to avoid the

accident. Without making a clear distinction between the two defenses, the District continued to discuss the "last clear chance" doctrine and never stated which defense the "last clear chance" doctrine applied to, allowing a reasonable juror to infer that it applied to both.

After closing arguments and after instructing the jury on assumption of risk, the trial court realized that the verdict form was incorrect. The court and the parties changed the verdict form to comply with the law of assumption of risk, which precluded the jury from deciding whether Mr. Juvenalis was contributorily negligent and whether the officer had the "last clear chance" to avoid the accident, if the jury decided that Mr. Juvenalis assumed the risk. Although changes were made to the verdict form, the jury was not given any clarifying instructions regarding the errors or misstatements of law in the closing arguments that prompted the changes to the verdict form. Based on the instructions and closing arguments, the jury was under the impression that regardless of whether Mr. Juvenalis assumed the risk or they found him contributorily negligent, they would have the opportunity to decide whether the officer had the "last clear chance" to avoid the accident, which would permit Mr. Juvenalis to recover for his injuries. The revised verdict form, however, precluded the jury from deciding contributory negligence or "last clear chance" in the event the jury decided that Mr. Juvenalis assumed the risk for his injuries.

Notwithstanding the revised and corrected verdict form, the erroneous jury instruction interfered with Mr. Juvenalis's substantial right to have a jury decide his ability to recover for his injury based upon the law applicable to his case—contributory negligence and the "last clear chance" doctrine. *See Wheeler, supra,* 930 A.2d at 246–47 (concluding that substantial rights

are violated when erroneous instruction interfered with foundational aspects of a criminal prosecution intended to protect the rights of the defendant). Because there was sufficient evidence in the record for a reasonable jury to conclude by a preponderance of the evidence that the police officer had the "last clear chance" to avoid the accident, the interference with his right to have the jury decide this issue was substantial. Put another way, absent the unobjected-to jury instruction, there is a "reasonable probability" that the result of the proceeding would have been different. *See Jones, supra,* 946 A.2d at 976.

Assuming *arguendo* that Mr. Juvenalis was found to be contributorily negligent—as the District contends he would have been—a reasonable jury could have concluded from the evidence that the police officer had the "last clear chance" to avoid the accident. The "last clear chance" doctrine applies when: (1) the plaintiff was in a position of danger caused by the negligence of both the plaintiff and the defendant; (2) the plaintiff was oblivious to the danger or unable to extricate himself from the position of danger; (3) the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of his obliviousness to it, or of his inability to extricate himself from it; and (4) the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and of his inability to extricate himself from it, but failed to do so. *Hall, supra* note 2, 825 A.2d at 958 (citations omitted). There was sufficient evidence for the jury to conclude that the officer had the last clear chance to avoid the accident. The first prong is satisfied because the jury concluded from the evidence that Officer Sullivan was negligent and that Mr. Juvenalis placed himself in a position of danger by crossing in the middle of the street with oncoming traffic.

There was sufficient evidence that Mr. Juvenalis was either oblivious to the danger or unable to extricate himself from the position of danger, either of which would satisfy the second prong of the "last clear chance" doctrine. The District's expert in toxicology and pharmacology testified that Mr. Juvenalis would have trouble processing information or perceiving and measuring distance and time. Mr. Juvenalis's medical records indicated that his blood alcohol level was greater than 0.28 grams/ 100 ml on the night of the accident. The expert also testified that at these levels an individual would not be able to appreciate or "know" the danger he was actually in. According to the expert, a person in that condition would have a decreased ability, as compared to an unimpaired individual, to "appropriately make reasoned decisions" and to process and rationally interpret multiple sensory inputs, such as sight and sound. He even opined that most people with Mr. Juvenalis's blood alcohol level would be unconscious.

A rational jury could have found that Officer Sullivan was aware, or should have been aware, of Mr. Juvenalis's obliviousness to the danger or of his inability to extricate himself from it. Several witnesses including Ms. Bryant, Mr. Abdi, Ms. Huber, and Officer Sullivan, saw Mr. Juvenalis in the street on the double yellow line. Ms. Huber testified that she observed Mr. Juvenalis from about one block away, and he "darted" out into the street a couple of different times trying to cross. Ms. Bryant testified that she slowed down and ultimately stopped her car because she saw Mr. Juvenalis in the street, and he appeared to be disoriented and was "turning backwards and forwards and twisting and turning, as if he did not know what to do." She never took her eyes off of him. Officer Sullivan testified that he saw Mr. Juvenalis from three-to-five car lengths away, but never testified

about Mr. Juvenalis's appearance or disorientation. Based upon all of the evidence including the toxicology report, although Officer Sullivan did not testify that he saw Mr. Juvenalis acting disoriented, a reasonable jury could conclude that Officer Sullivan had the opportunity to see "what was there to be seen" and failed to do so. Other witnesses with similar vantage points as the officer observed Mr. Juvenalis acting in a disoriented manner. *See Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 181 (D.C.1992) (failing to maintain a "proper lookout" and exercise reasonable care when driving an automobile is grounds for negligence) (citing *District of Columbia Trans. Sys. v. Harris*, 284 A.2d 277, 279 (D.C.1971)).

Lastly, there was evidence that Officer Sullivan could have avoided the accident. The officer noticed Mr. Juvenalis when he was "three to five car lengths away." Again, although Officer Sullivan did not testify that he could have avoided the accident, a reasonable jury could conclude that he could have. Other witnesses who were driving in vehicles on the same street testified that they saw Mr. Juvenalis and were able to slow down. Ms. Bryant not only slowed down but ultimately completely stopped her vehicle as a result of seeing Mr. Juvenalis and observing his actions in the middle of the street.

Accordingly, the erroneous jury instruction, which barred the jury's consideration of contributory negligence and the "last clear chance" doctrine, affected Mr. Juvenalis's substantial rights because there is a reasonable probability that the outcome of the trial would have been different.

### D.

A new trial is warranted when the error was so clearly prejudicial to an appellant's substantial rights as to jeop-

ardize the very fairness and integrity of the trial. *Headspeth, supra,* 910 A.2d at 318. In his closing argument, Mr. Juvenalis's counsel focused almost entirely on the "last clear chance" doctrine. He began with the statement "[i]f the law did not require drivers to be liable for injuries they cause when a pedestrian was not in [a] crosswalk, a driver's license will be a license to kill or injure anyone who was simply ... not obeying the law. This is why the 'Last Clear Chance' Doctrine was created to compensate individuals for injuries they received, even when they were not acting perfectly." Although this was an accurate statement of the law, the fairness and integrity of the trial was jeopardized because the jury essentially had to ignore this legal argument and its supporting evidence due to the erroneous jury instructions and verdict form. The District even conceded at oral argument that the jury did not understand the distinction between the assumption of risk doctrine and the contributory negligence doctrine. There-

fore, this misunderstanding of the applicable law led the jury to conclude that Mr. Juvenalis "assumed the risk," precluding it from considering the applicable doctrine of contributory negligence. Additionally, because of the jury's misunderstanding of the law, it failed to consider whether Mr. Juvenalis was still entitled to recover based upon the affirmative defense that Officer Sullivan had the "last clear chance" to avoid the accident. As a result, manifest injustice would result if we allowed the verdict to stand. Thus, a new trial is warranted. Accordingly, the judgment is reversed and the case is remanded for a new trial.

*So ordered.*